ANDREW C. DUNN v. GALLOWAY K. STEVENS, Administrator, and
Others.[1]

Nov. 11, 1895.

Nos. 9523—(18).

**Descent of Homestead—Constitution—Obligation of Contract.**

Under the law in force prior to 1889, the homestead of the debtor, upon
his decease, became assets for the payment of his debts, subject only to
the homestead rights of his widow and minor children, if any. The Pro-
bate Code of 1889 provided that the homestead of the deceased shall
descend to his heirs generally, in the order of descent, "free from all
debts or claims upon the estate of the deceased." *Held*, that this provision
is invalid as respects contracts made before its enactment, for the reason
that it impairs their obligation by so materially affecting the subsisting
remedy as to substantially lessen their value.

Appeal by Andrew C. Dunn from a judgment of the district court
for Blue Earth county, entered in pursuance of the findings and order
of Severance, J. Reversed.

*Benjamin D. Smith*, for appellant.

*Lorin Cray*, for respondents.

MITCHELL, J. In August, 1886, the appellant, Dunn, obtained a
judgment against Nathaniel Stevens for over $400. At that time,
and up to the time of his decease, Stevens owned, and occupied as
his homestead, 80 acres of land. In April, 1891, Stevens died in-
testate, leaving surviving him, as his only heirs, nine children, all
over the age of majority; but he left no widow. According to the
statutes in force in this state at the time Dunn obtained his judg-
ment, the 80 acres would have been assets of the estate of Stevens
for the payment of his debts, and would have descended to his heirs
subject to that charge. McCarthy v. Von Der Mey, 42 Minn. 189,
44 N. W. 53; McGowan v. Baldwin, 46 Minn. 477, 49 N. W. 251.
The law in this regard was changed by the Probate Code of 1889,
which provides that the homestead of the deceased shall descend to
his heirs, according to a specified order of descent, "free from all debts

[1] Reported in 64 N. W. 924, and 65 N. W. 348.

or claims upon the estate of the deceased." G. S. 1894, § 4470.[2] In the due course of administration Dunn presented his judgment as a claim against Stevens' estate, and it was allowed by the probate court, but there was no property belonging to the estate out of which to pay it, unless it be the land referred to. Upon petition of the heirs, the probate court made an order assigning the land to them, "free from all debts and claims upon the estate of said deceased." This order was, on appeal, affirmed by the district court, and Dunn appeals to this court; his contention being that the land was subject to the payment of his claim, and should have been applied, as far as necessary, to that purpose.

The question presented is whether the act of 1889, providing that land which was the homestead of an intestate at the time of his death should descend to his heirs, free and clear of the debts of the deceased, is invalid as to debts contracted prior to its enactment, because it impairs the obligation of such contracts. As this is a question arising under the federal constitution, the decisions of the supreme court of the United States are necessarily controlling. We think the case is more than covered by the decision of that court in Edwards v. Kearzey, 96 U. S. 595, since several times cited with approval by the same court. The constitution of North Carolina exempted from sale on execution a homestead not exceeding in value $1,000. Prior to the adoption of the constitution, there was no homestead exemption in that state. The court held, in the case cited, that this provision of the constitution was invalid as regards contracts made before its adoption because it impaired their obligation; that the remedy subsisting in a state when and where a contract is made, and is to be performed, is a part of its obligation, and any subsequent law of the state, which so affects that remedy as substantially to impair and lessen the value of the contract, impairs its obligation,

[2] Since the opinion in this case was filed, the writer has discovered that he was in error in assuming that the homestead of a deceased person would, under the statute, descend to his collateral heirs free from debts or claims against his estate. The descent of the homestead is governed by G. S. 1894, § 4470, and by its provisions the exemption extends only to the surviving husband or wife, children, or the issue of deceased children. The error was one which did not affect the result in this case, but attention is called to it to avoid misapprehension hereafter.     MITCHELL, J.

and is forbidden by the constitution. Whatever may be thought of the correctness of that decision, and whatever doubts may remain as to just how far that court may hold that a state may go in changing the remedy without impairing the obligation of existing contracts, the doctrine of the court clearly is that any statute, enacted after a contract is made, which so materially increases the exemptions to the debtor as to substantially impair or lessen the value of the contract is, as respects it, invalid.

That Dunn's judgment was a contract goes without saying. Under the laws in force when it was rendered, this land would, upon Stevens' death, have become assets for the payment of the judgment, subject only to the rights of the surviving beneficiaries, if any, of the homestead exemption, which were the widow and minor children. As Stevens left neither widow nor minor children, the entire estate in the land would, on his death, have become subject to the payment of his debts. But the act of 1889 provides that the homestead shall descend to the heirs, free and clear of all debts against the deceased, thus exempting or withdrawing from the payment of debts property which previously was subject to their payment. That this would substantially impair or lessen the value of the contract, within the meaning of Edwards v. Kearzey, is self-evident, as is illustrated by the present case, where it renders Dunn's judgment absolutely worthless. Viewed as a mere exemption law, it is much more obnoxious to the federal constitution than was the constitution of North Carolina. In that state the exemption was limited to $1,000 in value. In this state, the limitation being one of area and not of value, the homestead may be, and often is, worth many thousands of dollars.

But in still another respect is the appellant's case much stronger than Edwards v. Kearzey. In North Carolina the exemption was in favor of the debtor himself, and hence might be the means of enabling him to accumulate other property with which to pay his debts. But, under the law of 1889, the so-called exemption is in favor of heirs who, however wealthy they are or may become, are not liable for the debts of their ancestor. Neither is the exemption limited to the family of the deceased, or to those dependent on him for support, but it extends to the next of kin of the remotest degree. Indeed, the act of 1889 is not, in any proper sense, an exemption law. An exemption law, properly speaking, is one exempting the property of the debtor

from seizure and sale for his own debts for the benefit of himself and family. But this act assumes to exempt, in favor of heirs generally, the property of their ancestor from his debts, without reference to their relation to him or their own financial condition. They may be millionaires, and so distantly connected with the deceased as to have no claim, legal or equitable, upon his bounty. In short, the act is a mere attempt to take the property of the ancestor, of an indefinite and practically unlimited value, and give it to third parties without first paying his debts out of it. It is no answer to this to say that the homestead is not subject to sale for debts during the life of the debtor, and that the debtor himself might have sold it without subjecting it to the payment of his debts. It is enough to say that he did not do so, and that, if he had sold it, presumably he would have received for it other property, which would not have been exempt, or would have purchased another homestead with the proceeds. A debtor can, at any time before a specific lien attaches, sell or squander any of his property, but that is no reason why, in case he does not do so, the legislature may give it to his heirs, at his decease, free from the payment of his debts.

Our conclusion is that the provision of the Probate Code of 1889, that the homestead of a deceased person shall descend to his heirs, free and clear of all debts and claims upon the estate of the deceased, so affected the subsisting remedy as to substantially lessen the value of existing contracts, and hence impair their obligation, and is therefore invalid as respects contracts made prior to its enactment. The land in question is subject to the payment of the debts of the deceased, and should not have been assigned to his heirs until those debts are all paid.

Order reversed.