# JOHN CHRISTOPHER CROWLEY v. JENNIE NORTON.[1]

## November 12, 1915.

## Nos. 19,390—(62).

**Mortgage — owner not estopped by recitals in mortgage to him — notice.**

T gave a mortgage to P, the record owner of the land mortgaged. No deed from P to T was ever recorded, and there is no evidence that any such deed was ever given. It is *held*:

(1) Recitals in the mortgage of ownership of the land by the mortgagor, do not, under the circumstances of this case, estop the record owner or his grantees from denying title in the mortgagor or his grantees.

(2) A mortgage given to the record owner of the property by one who is a stranger to the title is not notice of an unrecorded deed from the record owner to the mortgagor.

Application of John Christopher Crowley for registration of title. Jennie Norton claimed title to two of the four lots involved. The matter was heard before Jelley, J., who made findings and ordered judgment in favor of applicant. From the judgment entered pursuant to the order for judgment, Jennie Norton appealed. Affirmed.

*A. S. Keyes* and *Henry Ebert,* for appellant.

*Leonard T. Erdall,* for respondent.

BUNN, J.

Defendant Jennie Norton filed her answer to this application to register title, claiming that she, and not the applicant, was the owner of two of the four lots involved. There was a reply to this answer, and the issue was tried. The trial court decided that applicant was the owner in fee of the two lots, and that defendant had no interest therein or right or title thereto. Judgment was entered on this decision, and defendant appealed to this court.

[1] Reported in 154 N. W. 743.

Defendant challenges certain of the findings of fact, chiefly the ultimate one of ownership, and the conclusions of law. The evidence disclosed the following evidentiary facts bearing on the question of the title to the lots in question.

Peter Sutherland owned the premises on November 22, 1887, and prior thereto. His title was in fee simple and of record. On the date mentioned there was recorded a mortgage from Thomas J. Sullivan to Peter Sutherland, dated June 25, 1887, purporting to convey the lots to secure the sum of $600, recited to be "the unpaid portion of the purchase money on sale of said premises." November 17, 1887, Peter Sutherland assigned this mortgage with sixteen others to the Minnesota Loan & Trust Company as security for a note. These mortgages were in 1888 assigned by the trust company to one Peck, and in 1890 reassigned to Peter Sutherland. All of these assignments were duly recorded. No further transfer of the Sullivan mortgage appears, and there is no claim that it was ever satisfied or paid. The record title to the lots in controversy remained at all times in Peter Sutherland. There is no deed on record from him to Sullivan, and no evidence of any unrecorded deed. Peter Sutherland died in December, 1910. Defendant claims title through a quitclaim deed from Sullivan and wife executed January 12, 1911, and recorded January 25, 1911. The title of the applicant comes from a deed from Peter Sutherland recorded July 18, 1909. This deed was given for a valuable consideration pursuant to a prior contract for the conveyance of these and other lots. There is no claim that applicant had any notice that Sullivan had or claimed any title to or interest in the lots, except that he knew that the mortgage from Sullivan to Sutherland appeared of record. From 1887 to his death Peter Sutherland paid all the taxes on the property, and the applicant has paid the taxes since then, with the exception of the sum of $6.10 which defendant paid in January, 1911, in order to record her quitclaim deed. Sullivan, though at all times a resident of Minneapolis, never paid any taxes on the lots, and never asserted any claim of ownership until his quitclaim deed to defendant in 1911, twenty-three years and more after he gave the mortgage.

The foregoing facts appear without dispute. We say this without overlooking the untenable claim now made that there is no proof to sus-

tain the finding that the deed from Peter Sutherland to applicant was made and recorded as stated. The trial court found, in addition to the above facts, that applicant was a *bona fide* purchaser for a valuable consideration, without notice, and that defendant, when she took the quitclaim deed, had constructive and actual notice of the already recorded warranty deed from Peter Sutherland to applicant, and that she was not a *bona fide* purchaser. As conclusions of law, the court found that defendant had no interest, right or title to the lots, and ordered and decreed that applicant was the owner of an estate in fee simple therein, and that his title be confirmed and registered.

1. We need not consider the assignments of error separately. The argument of appellant is that the recitals in the mortgage from Sullivan to Sutherland, estopped the latter and his grantees from denying that Sullivan was the owner of the lots. The doctrine invoked has no application to the present case. Neither Sullivan nor his grantee is in any position to assert this equitable doctrine. Neither has been in any way prejudiced by the recitals. If there is any estoppel in the case, it works against Sullivan and his grantee.

2. A mortgage given to the record owner of the property by one who is a stranger to the title is not notice of an unrecorded deed from the record owner to the mortgagor. Burke v. Beveridge, 15 Minn. 160 (205). And in the case at bar there is no evidence that there ever was an unrecorded deed from Sutherland to Sullivan. The deed under which the applicant claims title was from the record owner, and was recorded before the deed of defendant from one who appears never to have had any title.

Judgment affirmed.