Lura A. Burnham, Plaintiff, *v.* John J. Bennett, Jr., as Attorney-General of the State of New York, and Others, Defendants.

Supreme Court, Albany County, October, 1931.

*Robert W. Fisher,* for the plaintiff.

*John J. Bennett, Jr., Attorney-General* [*James H. Glavin* of counsel], for the defendants.

Staley, J. It appears from the complaint that the sum of $90,000 was appropriated by chapter 114 of the Laws of 1928 for the acquisition of lands for the extension of the Saratoga Battlefield. In February, 1929, the officers of the State entered upon plaintiff's lands, and, in good faith, appropriated the same under said statute and pursuant to subdivision 1 of section 59 of the Conservation Law (added by Laws of 1916, chap. 451, as amd. by Laws of 1928, chap. 242). The plaintiff, being unable to agree upon the value of the lands, prosecuted a claim therefor in the Court of Claims and recovered a judgment in that court for $14,004.37 against the State. The State appealed but the appeal was dismissed. Plaintiff has not entered a judgment on the appeal, as interest would cease after thirty days from the entry of the

judgment (Conservation Law, § 59, subd. 7, added by Laws of 1916, chap. 451, as amd. by Laws of 1928, chap. 242), and the officers of the State, upon the advice of the Attorney-General, have indicated that they question the validity of the judgment, and, if valid, that there is no fund from which it can be now paid. It further appears that other lands were appropriated by the officers of the State pursuant to the statutes above mentioned, and claims therefor having been paid, there remains a balance of only $2,235.10 from the appropriation made in 1928, and the reappropriated balance.

Plaintiff is advised by the Attorney-General that she should await a further appropriation by the Legislature.

The Attorney-General takes the position that an appropriation having been made for the specific object of paying for the lands in question, that appropriation is the sole fund from which payment may be made; and he refers to several provisions of the Constitution of this State to sustain this ruling.

Article 3, section 21, of the State Constitution provides as follows: " No money shall ever be paid out of the treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years next after the passage of such appropriation act; and every such law making a new appropriation or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied; and it shall not be sufficient for such law to refer to any other law to fix such sum."

Article 7, section 2, provides as follows: " The state may contract debts in anticipation of the receipt of taxes and revenues, direct or indirect, for the purposes and within the amounts of appropriations theretofore made; bonds or other obligations for the moneys so borrowed shall be issued as may be provided 'by law, and shall with the interest thereon be paid from such taxes and revenues within one year from the date of issue."

Article 7, section 3, provides as follows: " In addition to the above limited power to contract debts, the state may contract debts to repel invasion, suppress insurrection, or defend the state in war, or to suppress forest fires; but the money arising from the contracting of such debts shall be applied for the purpose for which it was raised, or to repay such debts, and to no other purpose whatever."

Article 7, section 4, provides in part as follows: " Except the debts specified in sections two and three of this article, no debt shall be hereafter contracted by or in behalf of this state, unless

such debt shall be authorized by law, for some single work or object, to be distinctly specified therein. On the final passage of such bill in either house of the legislature, the question shall be taken by ayes and noes, to be duly entered on the journals thereof, and shall be: " Shall this bill pass and ought the same to receive the sanction of the people? " No such law shall take effect until it shall, at a general election, have been submitted to the people, and have received a majority of all the votes cast for and against it at such election nor shall it be submitted to be voted on within three months after its passage nor at any general election when any other law, or any bill shall be submitted to be voted for or against."

Article 7, section 15, provides as follows: " In addition to any other debt, authorized by or pursuant to this article, the legislature, in each of the ten calendar years following the adoption of this section, may authorize by law the creation of a debt or debts, not exceeding in the aggregate in any such year the sum of ten million dollars, to provide moneys for the acquisition by the state of real property and for the construction of buildings, works and improvements for the state, or for any one or more of such objects. The provisions of this article, not inconsistent with this section, relating to the issuance of bonds for a debt or debts of the state and the maturity and payment thereof, shall apply to a state debt or debts created pursuant to this section; except that the law authorizing the contracting of such debt or debts shall take effect without submission to the people pursuant to section four of this article."

The above provisions of the Constitution relied upon by the Attorney-General unequivocally forbid the creation of debts by the Legislature except for appropriations made and in the anticipation of current taxes unless authorized by the vote of the People and except in special cases expressly provided for in the Constitution itself. No money shall ever be paid out of the treasury of the State or any of its funds, except in pursuance of an appropriation by law (State Const. art. 3, § 21).

While these limitations require strict compliance, they are no more sacred than the provision of the Constitution that private property shall not be taken without just compensation. All of these provisions must be given an interpretation that will render them workable in the practical affairs of the administration of government.

To require State officials, in the taking of private property, to determine to the penny the value of lands taken, and thus always to predict value to the last cent of an appropriation, is to require something impossible of practical accomplishment. Their duty is

to keep within the appropriation made for the purpose, but if, acting in good faith, they inadvertently exceed it to an extent which is not designed nor unreasonable, nor to an extent sufficient to put an owner on notice so that he may protect himself from trespasses, the credit of the State is pledged to pay the deficiency.

"It by no means follows that if the amount of money appropriated by the Legislature is inadequate fully to pay the judgment of the Court of Claims, compensation is not sufficiently provided for to meet constitutional demands and that an act of appropriation of lands is, therefore, *ultra vires* and void. The amount appropriated is a qualified limitation upon the power to act. Public officials are presumed to act within their authority and if they in good faith and with authority of law appropriate lands found by the Court of Claims to be of greater value than the amount actually appropriated therefor, the credit of the State may be pledged to meet the deficiency. Otherwise the whole plan of appropriation by entry or condemnation would be dependent on the infallibility of the public officials in estimating the true value of property taken by them for State purposes." (*Pauchogue Lane Corporation* v. *Long Island State Park Commission*, 243 N. Y. 15.)

To hold otherwise is to construe that part of the Constitution as to the creation of debts so rigidly as to render that part in relation to eminent domain, which is so necessary to the welfare of the people, unworkable as a practical proposition.

However, in the case at bar it is not necessary to go as far as this. Plaintiff's claim may be paid within appropriations made without creating a debt.

The Legislature has appropriated for the payment of judgments of the Court of Claims a sum sufficient to cover plaintiff's judgment, and which is unexpended. This is admitted.

This appropriation is not limited to any particular judgments, and is available. Plaintiff's claim should be satisfied from the fund. The Attorney-General contends that this fund is evidently created to pay judgments other than for specific objects for which an appropriation has been expressly made. An intent so inflexible as to render nugatory the eminent domain provisions of the Constitution under the circumstances disclosed here cannot be imputed to the Legislature. The appropriation should be available to pay judgments such as this one where the officers of the State have acted legally and in good faith.

Plaintiff demands a declaratory judgment defining her rights. She contends that mandamus is not an adequate remedy as she must enter her judgment to bring mandamus and thus, after thirty days, and during the litigation which would necessarily ensue, due to the

attitude of the officials of the State, she would lose her interest. This is not in effect an action against the State. (*Rolston* v. *Missouri Fund Comrs.*, 120 U. S. 390.)

I think plaintiff may have her rights defined before she enters her judgment, so that she may collect her award, without loss of interest.

Judgment is, therefore, granted declaring that the judgment of the Court of Claims is a valid and legal judgment against the State and that such judgment, when it is entered and all required proceedings are completed, may be paid from the appropriation to pay judgments of the Court of Claims, with ten dollars costs.