CARL SIEGFRIED NATHANIEL BENGTSON AND ANOTHER
v. ESTHER BENGTSON SETTERBERG AND OTHERS.[1]

January 7, 1949.

No. 34,382.

[1]Reported in 35 N. W. (2d) 623.

338

*A. R. English,* for appellants.
*Hall & Forbes,* for respondents.

Separate briefs as *amici curiae* were filed in support of the petition for reargument by *Charles B. Howard, Abbott L. Fletcher, John J. Gleason, J. A. Morrison,* and *Wilbur H. Cherry,* and by the following:

*Grannis & Grannis* and *Warren Miller,* of the First Judicial District.

*W. P. Westfall, John Christopherson, Clinton W. Redlund, Gustav C. Axelrod, Smith & Sehm, Orr, Stark & Kidder, Otis, Faricy & Burger, Walter T. Ryan, Fred A. Kueppers, Bundlie, Kelley, Finley & Maun, Cummins & Cummins, Sanborn & Andre, Kelley & LeVander, A. J. Newgren, O'Brien, Horn, Stringer, Seymour & O'Connor, Briggs, Gilbert, Morton, Kyle & Macartney, Ulvin & Christensen, William F. Hunt, Calvin Hunt, Todd, deLambert & McCloud, A. F. Soucheray, Jr., Claude Allen, Beldin H. Loftsgaarden, McGuigan & McGuigan, Frank J. Danz, Buchmeier, Nelson & Knapp, Randall, Smith, Blomquist & Krawetz, Lewis L. Anderson, Patrick J. Ryan, Stacker & Stacker, Sullivan & Sharood, Schmitt & Schmitt, Paul C. Thomas, Joseph F. Cowern, Silver, Green & Goffstein, J. P. Drews, Barta & Rohleder, Russell M. Carlson, McMeekin & Quinn,* and *Scott, Burke & Scott,* of the Second Judicial District.

*Robert M. Crounse, Floyd E. Nelson, J. B. Clarkson, Herbert W. Estrem, M. G. Sundheim, Byron W. McCullagh, Charles B. Howard, Grant L. Martin, Walter U. Hauser, John E. Peters, G. T. Carroll, Gerhard N. Sonnesyn, James D. Bain, H. C. Rowberg, Virgil J. Schabel, Bleecker & Babcock, Lloyd P. Johnson, Horace Van Valkenburg, Harlan B. Strong, Chester Marr, W. A. McManigal, Jr., Harry E. Olsen, Leonard E. Oslund, F. M. Ridgway, O'Neill J. Grathwol, Wellington Tully, Edmund T. Montgomery, Vincent Johnson, Lauress V. Ackman, Betty W. Washburn, W. L. Harsh, Benjamin Drake, Henry W. Lauderdale, Seth Lundquist, C. Alfred Bergsten, Charles W. Root, Robert H. Petzke, W. L. Lindsten, Frank N. Whitney, Victor M. Petersen, C. O. Lundquist, Russell W. Lindquist, Frederick L. Thorson, W. E. Blaisdell, William Thiel, R. G. Patton, C. G. Patton,* and *George Maloney,* of the Fourth Judicial District.

*Charlotte Farrish, A. R. Pfau, III, J. R. Klaseus, Arthur H. Ogle,* and *C. A. Johnson,* of the Sixth Judicial District.

*A. E. Haering,* of the Eighth Judicial District.

*Somsen & Somsen, Flor & Reim,* and *S. P. Gislason,* of the Ninth Judicial District.

*McCabe, Gruber, Clure, Donovan & Crassweller, Alex G. McKnight, Hans B. Haroldson, Carl Hammer, G. A. Myles, Arthur W. Roberts, R. Vern Eckman, R. H. Neimeyer, Erling Berg, Thomas J. Doyle,* and *Harry W. Davis,* of the Eleventh Judicial District.

*James G. Mott, V. Hollaren, Hughes & Hughes,* and *Arnold W. Brecht,* of the Thirteenth Judicial District.

*O. J. Anderson,* of the Eighteenth Judicial District.

UPON REARGUMENT.

KNUTSON, JUSTICE.

The facts in this case are not in dispute. Carl Gustaf Bengtson died intestate on June 6, 1887. He was survived by his wife, Ellen, and four children, Henning, Esther, Johan, and Carl, ranging in age from two to eight years. Decedent was the owner in fee of a half section of land in Lyon county, the south half of the southwest quarter of which was the family homestead, upon which decedent and his family then and for many years had resided. It was separately and correctly described in the inventory and in the court's final decree dated July 14, 1888. The present litigation arises out of the following portion of the final decree giving to the wife the homestead in fee:

"* * * That all and singular of the above described real * * * property be and the same is hereby *assigned to and vested* *—* * * *forever,* in the following proportions to wit: To Ellen Bengtson widow the homestead of said deceased * * *," fully describing the same. (Italics supplied.)

As to the rest of the 320-acre farm, the decree correctly determined the respective shares going to the widow and children.

In 1889, Ellen married defendant John W. Carlson. In 1892, she and her husband conveyed the homestead by warranty deed to one Ole J. Miller, who immediately reconveyed it to the husband, said John W. Carlson. Both deeds were duly recorded. Three children were born to them. One died in infancy, and the other two are still living. Two children of the first marriage, Henning and Esther, upon reaching majority, moved away from the farm. Johan continued to live on the old homestead until his death in 1924, when he died intestate without spouse or issue. Ellen continued to reside with her husband on the homestead until her death on July 6, 1945, and there her husband is still residing along with the son Carl, who has at all times lived at the old family home.

On February 23, 1914, all the Bengtson children filed a petition in the probate court to have the final decree in their father's estate corrected in respect to the homestead so that their interests therein might be corrected and determined to be as by applicable law required. The petition recited the facts substantially as we have stated them. On February 20, 1915, that court denied the petition, and no appeal has ever been taken from that order.

The two petitioners here, hereinafter referred to as plaintiffs, brought this suit under the declaratory judgments act to have the rights and interests of the parties determined by the district court. The daughter, defendant Esther Setterberg, has the same interest in the property as each of the plaintiffs. Defendant John W. Carlson claims to be the owner of the entire homestead property by virtue of the deeds referred to. Defendant C. J. Donnelly, as administrator with the will annexed of the estate of Ellen Bengtson Carlson, represents the interests of the deceased Ellen. The trial court found that the final decree of distribution in the elder Bengtson's estate was conclusive on all parties to the cause and that the trial court as such was without jurisdiction of the parties and of the subject matter in the present proceedings. The present appeal is from an order denying plaintiffs' motion for amended findings or a new trial. Only that part of the order denying a new trial is reviewable.

In its memorandum the trial court aptly stated the issues involved as follows:

"The issue here presented is whether or not the decree of distribution of the Probate Court can, in effect, be set aside in this action. The Probate Court by its order erroneously in its decree of distribution assigned to the widow of the intestate the homestead in fee when it should have been decreed to her only for life, and by this action the petitioners seek to set aside this decree of the Probate Court, or on the other hand claims that the real estate of the intestate under the laws of descent and distribution vested in the heirs immediately upon the death of the intestate and that the Probate Court had no power to change the descent of such property by its decree."

The first question presented here is whether the issues raised may be determined in an action brought under our declaratory judgments act. If the answer to this question is in the negative, we need go no further.

Our statute, which is the uniform declaratory judgments act, is found in M. S. A. 555.01, *et seq.* Section 555.04 reads:

"Any person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto:

"(1) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or other; or

"(2) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

"(3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

This section does not limit the power of the court to declare a right

where such declaration is necessary to determine a controversy or remove an uncertainty. See, § 555.05.

Borchard, Declaratory Judgments (2 ed.) 355, has this to say regarding the power of the court to declare rights based on prior judgments:

"It is sometimes said that a final judgment cannot be reopened or challenged by a declaratory action, and some courts have gone so far as to say that it cannot be clarified by a collateral action for a declaratory judgment. Thus, a judgment sustaining an order of a fire marshall [sic] directing demolition of petitioner's house as a fire hazard cannot be collaterally attacked by a new action for a declaration that the statute authorizing the order was unconstitutional. This would be merely an evasion of the statutory method of appeal, or an attempt to obtain a review of an unappealable judgment, and cannot of course be tolerated. Nor can the validity of the judgment of a court of coordinate jurisdiction be reviewed by a declaratory judgment. Perhaps it goes without saying that the declaratory action is not a substitute for a new trial or for an appeal from a former judgment deciding identical issues or issues which the court believes were necessarily passed upon.

"But this does not mean that when an earlier adjudication is the source of rights or contest, when it is unclear or ambiguous, or when there is a question whether it is a judgment at all, its legal effects and construction cannot be placed in issue. This has happened in an action to determine whether an administrative finding that particular insurance policies are void is a judgment and hence admissible in evidence;[36] that a judgment was null and void *ab initio*;[37] that the homestead land of the petitioner was not subject

"[36]American Motorists Ins. Co. v. Central Garage, 86 N. H. 362, 169 Atl. 121 (1933).

"[37]Lloyd v. Weir, 116 Conn. 201, 164 Atl. 386 (1933) (invalidity of judgment voiding will);

"Burr v. Anglo-French Banking Corp., 149 L. T. R. 282 (K. B. 1933), where judgment against defunct corporation was declared void.

to levy on a judgment obtained against his relatives;[38] that defendant county is under duty to obtain funds for the payment of plaintiff's judgment from a certain tax;[39] that a judgment on the powers of a Board of Education with respect to the consolidation of school districts had certain specifically named effects as to future consolidations;[40] that the ambiguity in an earlier judgment be resolved, clarified and interpreted;[41] that the obligations under a divorce

"[38]Schweers Hardware Co. v. Davids, 228 Wis. 683, 281 N. W. 684 (1938) (court recommended declaratory action).

"[39]Board of Commissioners of Delaware Co. v. Farmers State Bank of Eaton, 104 Ind. App. 692, 10 N. E. (2d) 769 (1937). *Cf.* Lloyd v. Los Angeles County [41 Cal. App. (2d) 808], 107 P. (2d) 622 (1940) (right to collect on garnishment judgment against C Co.).

"[40]Montgomery *et al.* (Kennedy, intervener) v. Board of Administration, 34 Cal. App. (2d) 514 [93 P. (2d) 1046], 94 P. (2d) 610 (1939) (as intervener was not party to original declaratory action, the remand to the lower court has the effect of determining the effect of prior judgment);

"Ezzell v. Exall, 207 Ky. 615, 269 S. W. 752, 211 Ky. 814, 278 S. W. 155 (1925) (declaration to determine effect of prior judgment);

"*Ex parte* County Board of Education of Montgomery County, 260 Ky. 246, 84 S. W. (2d) 59 (1935);

"In Teague v. Trustees, Executors & Agency Co., 32 C. L. R. 252 (1923), the court undertook, at request of trustees asking declaration of privilege to distribute under will, to construe 1912 order passing on question when persons now dead were still alive.

"In Germany it is not uncommon to sue by declaration for the construction or interpretation of an earlier judgment. RG. March 15, 1912, Soergel 1912, p. 495; Augsburg March 30, 1926, Soergel 1926, p. 305; Bavaria OLG. Oct. 22, 1927, Soergel 1928, p. 304; 147 RG. 27 (Feb. 2, 1935).

"[41]This has been done in Scotland: Park's Curator v. Black, 8 M. 671 (1870).

"An ambiguous award of arbitrators as to rate of pay and the meaning of 'pitch' has been clarified and interpreted by declaration. Lofthouse Colliery v. Ogden, [1913] 3 K. B. 120. But the validity of an arbitral award can hardly be attacked by declaration, certainly so long as code provisions enable the invalid awards, like judgments, to be set aside. Yet it has been done in India, where judgment was rendered against a minor without appointment of a guardian *ad litem:* Purno v. Maharajadhiraj, 18 Calcutta L. J. 18 (1913).

settlement and decree be construed;[42] that the rights of the petitioner accruing under a judgment against the State be declared before entry thereof, since the source of payment was uncertain and entry would foreclose interest;[43] that a state judgment respecting title to land is a complete bar to any contrary claim in the federal courts.[44]"

The case of Lloyd v. Weir, 116 Conn. 201, 164 A. 386, involved a situation somewhat similar to that which we have before us. The question involved was whether a decree of a probate court settled the rights of the parties in an estate, and, if it did not, the plaintiff sought a determination of his rights in and to the estate. The court there said (116 Conn. 203, 164 A. 387):

"Although not clearly expressed, the essence of the relief which the plaintiff is seeking is a declaratory judgment which shall determine whether the decree of the Court of Probate upon his application for an accounting conclusively settled the rights of the parties in the estate of Francis Bown after the death of Mrs. Lloyd and, if it did not, a determination of his rights in and to that estate. The facts which might be proved under the allegations of the complaint would afford the necessary basis for such a declaration of

"[42]Handschy v. Handschy, 32 Cal. App. (2d) 504, 90 P. (2d) 123 (1939); "Kiebler v. Kiebler, 170 Misc. 81, 9 N. Y. S. (2d) 909 (1939);

"Beach v. Beach, 57 Ohio App. 294, 10 Ohio Op. 460, 13 N. E. (2d) 581 (1937) (court approved declaration of construction);

"*cf.* Walker v. Walker, 132 Ohio St. 137, 5 N. E. (2d) 405 (1936) (where issue had been settled by Georgia judgment, hence Ohio judgment would be futile).

"[43]Burnham v. Bennett, 141 Misc. 514, 252 N. Y. S. 788 (1931). The plaintiff was sustained in suing in the Court of Claims to define her rights accruing from a prior judgment against the State for the value of land taken for a park. The appropriation had been exhausted, and she declined to enter her judgment then, because interest on it would cease. She claimed she had to be paid from the Court of Claims appropriation, and not await a new legislative appropriation. Her dilemma was appreciated by the court and relieved by judgment.

"[44]Board of Commissioners for Buras Levee Dist. v. Cockrell, 91 F. (2d) 412 (C. C. A. 5th, 1937)."

rights and we see no reason why the plaintiff is not entitled to a judgment fixing them."

In the case of Montgomery v. Minneapolis Fire Dept. Relief Assn. 218 Minn. 27, 15 N. W. (2d) 122, we discussed the general purpose of the declaratory judgments act. See, also, Professor Borchard in his article *The Uniform Declaratory Judgments Act* in 18 Minn. L. Rev. 239. For an exhaustive annotation on the subject, see 87 A. L. R. 1205.

While it is generally true that a declaratory judgment cannot be used for the purpose of making a collateral attack upon the judgment of a court of competent jurisdiction, the proceeding in this case is not limited to such collateral attack. Here, plaintiffs seek to have the court determine that the judgment entered by the probate court was void; that is, that it was no judgment at all. Rights under a decree, when left in doubt, are within the purview of the declaratory judgments act, and we believe that this court may determine what legal relations, if any, flowed from the decree entered by the probate court in 1888 and, by so doing, clear up the uncertainty as to rights of the parties involved. In so doing, we do not pass collaterally upon the judgment of the probate court, nor do we change or modify the terms of that decree, but we determine whether there was any valid judgment at all that could affect the rights of the parties. If we decide that the judgment is void for want of jurisdiction in the probate court, it leaves the parties where they were before the decree was entered. If we decide that the court had jurisdiction, the rights of the parties are then governed by the decree as it was entered by the probate court. Hence, the action will lie. That, in effect, was what the trial court did, and, even though the court found that it had no jurisdiction, it did pass on the merits of the controversy, so we have considered this appeal in like manner.

Plaintiffs contend that the probate court exceeded its authority in entering a decree assigning the homestead to the widow in fee, contrary to the statute then governing the descent of property; hence that the decree is void. In other words, plaintiffs contend that the court could not, by its decree, assign the homestead to any-

one except those who would take it under the statute of descent. Defendants contend that the decree, even though erroneous, is binding on all parties interested in the estate.

The jurisdiction of our probate court, which is derived from and defined in Minn. Const. art. 6, § 7, is as follows:

"* * * A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship, but no other jurisdiction, except as prescribed by this Constitution."

■ Our probate courts are courts of record of superior jurisdiction, though the jurisdiction is limited to certain specified subjects. Davis v. Hudson, 29 Minn. 27, 11 N. W. 136; McNamara v. Casserly, 61 Minn. 335, 63 N. W. 880.

■ The administration by the probate court of the estate of a decedent is a proceeding in rem. Its decrees of distribution are binding on everyone interested in the estate, at least if such decree covers a subject over which the court has jurisdiction. Fridley v. Farmers & M. Sav. Bank, 136 Minn. 333, 162 N. W. 454, L. R. A. 1917E, 544; Brotton v. Donovan, 177 Minn. 34, 224 N. W. 270; Schmitz v. Martin, 149 Minn. 386, 183 N. W. 978; Murray v. Calkins, 191 Minn. 460, 254 N. W. 605. In the Murray case we held (191 Minn. 462, 254 N. W. 606):

"* * * It is the principal function of the probate court in administering the estates of persons deceased to determine who is entitled to share therein, the proportions in which they take, and to assign to each his share. That is done by the decree of distribution, the incidence of which, as a judgment *in rem*, is not upon or against persons but on and in respect to property and the title thereto. * * * The judgment determines the descent or inheritance and, for the distributees, is the basis and conclusive evidence of title. Unless vacated, it is complete protection against all excluded claimants, and excludes all not thereby adjudicated to be distributees."

The decree of a probate court in a matter over which it has jurisdiction is *res judicata,* and, whether right or wrong, the decision is binding unless reversed or modified on appeal or in a direct pro-

ceeding. Rickert v. Wardell, 142 Minn. 96, 170 N. W. 915. In that case, the widow failed to make a selection of household goods, and they were assigned by the probate court under its decree of distribution. The widow later brought this action to recover possession of the household goods. Holding that the decree was binding on all persons, we said (142 Minn. 98, 170 N. W. 916):

"* * * The household goods were part of the estate of the deceased. The probate court has jurisdiction over such property, and where it is accounted for in the final account, and assigned by the court in the decree of distribution, with the knowledge and acquiescence of the widow, the decree of the probate court is conclusive, and as long as the decree stands she has no right in the portion of such property assigned to others. * * * It is not subject to collateral attack. Even if erroneous, it is nevertheless binding and conclusive, until reversed on appeal or set aside by some proper proceeding."

In Ladd v. Weiskopf, 62 Minn. 29, 35, 64 N. W. 99, 101, 69 L. R. A. 785, involving the construction of a will, we said:

"Whether this decree was in accordance with the correct construction of the will or not, it is binding and conclusive upon all persons interested in the estate of the deceased, whether under disability or not, or whether then in being or not."

In Greenwood v. Murray, 26 Minn. 259, 2 N. W. 945, the court, by its decree of distribution, assigned the real estate of the decedent to a trustee under a trust admittedly void, the probate court construing the trust to be valid. With respect to the validity of the decree, we said (26 Minn. 262, 2 N. W. 948):

"* * * When a decree assigning the estate is made, it is undoubtedly final unless reversed, and concludes all parties interested as to everything necessarily involved in the decree. If it assign real estate to any person, it establishes his right to such real estate as the judgment of any other court of competent jurisdiction would. The decree of June 17, 1874, was within the jurisdiction of the probate court. Although the trust provided in the will was originally

void, it is established by the decree as valid, and must be enforced."

In Doran v. Kennedy, 237 U. S. 362, 368, 35 S. Ct. 615, 617, 59 L. ed. 996, 999 (affirming 122 Minn. 1, 7, 141 N. W. 851, 853), the court said:

"* * * If the determination of the probate court was wrong, her remedy was to appeal from that determination. The heirs were entitled to one day in court, but not to two. When a probate court with jurisdiction over property for purposes of administration, and for purposes of sale in certain cases, orders and confirms a sale of the same, it is the right and duty of an heir to litigate the propriety of such orders in that proceeding. The heir cannot sit by, permit the sale to be made, and then bring another and a collateral action in another court to litigate again the propriety of the sale, and to procure a decree declaring it to be void. Such a practice would place no end to litigation."

■ We have held in a variety of cases that a decree of a probate court in a matter over which it has jurisdiction is not subject to collateral attack. Such decree is not subject to collateral attack because the petitioner had no right to file a petition, Fridley v. Farmers & M. Sav. Bank, 136 Minn. 333, 162 N. W. 454, L. R. A. 1917E, 544; In re Estate of Eklund, 174 Minn. 28, 218 N. W. 235; because of failure to give proper notice of proceedings, Hadley v. Bourdeaux, 90 Minn. 177, 95 N. W. 1109; Hanson v. Nygaard, 105 Minn. 30, 117 N. W. 235, 127 A. S. R. 523; because the court made an error of fact, Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302; DeWolf v. Ericson, 175 Minn. 68, 220 N. W. 406; Brotton v. Donovan, 177 Minn. 34, 224 N. W. 270; because an intestate decree is not subject to collateral attack on discovery of a will, Carlson v. Carlson, 169 Minn. 420, 211 N. W. 578; because a court misconstrued the will, Ladd v. Weiskopf, 62 Minn. 29, 64 N. W. 99, 69 L. R. A. 785; Faloon v. Flannery, 74 Minn. 38, 76 N. W. 954; Bengtsson v. Johnson, 75 Minn. 321, 78 N. W. 3; Long v. Willsey, 132 Minn. 316, 156 N. W. 349; In re Trust Under Will of Fogg, 193 Minn. 397, 259 N. W. 6; or because the court made an error

of law, Greenwood v. Murray, 26 Minn. 259, 2 N. W. 945; Wellner v. Eckstein, 105 Minn. 444, 117 N. W. 830; Rickert v. Wardell, 142 Minn. 96, 170 N. W. 915.

The decree of a probate court is entitled to the same weight as the decree of a district court in a matter over which it has jurisdiction. The case of State ex rel. Wise v. Jamison, 69 Minn. 427, 72 N. W. 451, involved a divorce decree in which the district court awarded plaintiff permanent alimony in excess of that authorized by statute. Defendant did not appeal. After the time for appeal had expired, defendant made a motion to modify the judgment on the ground that that part of the judgment was unauthorized by law. The motion was denied. Thereafter, he was adjudged to be in contempt for failure to abide by the judgment and was ordered to be imprisoned until he did comply. With respect to the validity of the original decree, we said (69 Minn. 428, 72 N. W. 452):

"* * * The court had jurisdiction of the subject-matter of the action and of the parties thereto, and the fact that the trial court may have made errors of law *which are apparent on the face of the judgment roll* does not render the judgment void. So long as it remains unreversed or unmodified, the defendant is bound by it." (Italics supplied.)

There is a distinction often made in cases where the court exceeds its jurisdiction over the subject matter. The distinction is pointed out in the case of Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741. In that case, plaintiff claimed to have been taken into the home of Anfin Utheim and his wife, Marith Utheim, at a tender age, under an agreement between the Utheims and plaintiff's mother that they would adopt plaintiff. The Utheims thereafter frequently informed plaintiff that they would leave her their property upon their death. After the death of Marith Utheim, Anfin married defendant and later died testate, leaving all his property, consisting mostly of real estate, to defendant. The probate court allowed the will and made a decree assigning the property to defendant. No appeal was taken. With respect to the validity of the decree, if

plaintiff's rights were those of an adopted child, we said (131 Minn. 59, 154 N. W. 742) :

"* * * Assuming that plaintiff, by virtue of the contract, possessed the same rights as a natural child, and no others, she is concluded by the judgment rendered by the probate court, and cannot enforce, in this action, the rights of a pretermitted child."

In the event that plaintiff's rights depended upon a contract to leave her the property upon the death of the Utheims, which had been performed by her, the court held that the action could be specifically enforced, in which event the decree of the probate court would not be binding upon her. The court said in that respect (131 Minn. 61, 154 N. W. 743) :

"If it appears from the complaint that, at the death of Anfin Utheim, plaintiff was entitled to receive his property, or a child's portion thereof, by virtue of the contract, independent of the laws of descent, she has the right to enforce such contract in the present action notwithstanding the final decree rendered by the probate court."

■ It therefore becomes apparent that the determinative question in this case is: Did the probate court have jurisdiction to make a decree assigning the homestead to the person it determined was entitled to receive it? If it did, even though it made a mistake of fact or of law, the decree would be binding upon all those interested in the estate unless reversed on appeal or in a direct proceeding. In order to determine this question, we must examine the statutes and authorities relating to a homestead and the statutes relating to the powers and jurisdiction of the probate court as of the date of the death of decedent.

The statutes defining the power and jurisdiction of the probate court at the time of the entry of this decree are to be found in G. S. 1878, c. 49, which so far as material here provides:

"§ 3. **Further jurisdiction of probate court.** The probate court has jurisdiction also—

\* \* \* \* \*

"Fourth. *To enforce* the payment of debts and legacies, and *the distribution of the estates* of intestates;" (Italics supplied.)

It is noteworthy that throughout the entire chapter defining the power and jurisdiction of probate courts reference is frequently made to the power to dispose of real estate.

G. S. 1878, c. 56, § 4, dealing with the partition and distribution of estates, is also significant in seeking an answer to the questions here involved. It reads:

"§ 4. **Assignment of residue of estate, after payment of debts, etc.** After the payment of the debts, funeral charges, and expenses of administration, and after the allowance made for the expenses of the maintenance of the family of the deceased, and for the support of the children under seven years of age, and after the assignment to the widow of her dower, and of her share in the personal estate— or when sufficient effects are reserved in the hands of the executor or administrator for that purpose—the probate court shall, upon the application of the executor or administrator, or any other party having an interest in the estate of the deceased, by a decree for that purpose, assign the residue of the estate, if any, to such other persons as are by law entitled to the same; and *in such decree the court shall name the persons, and the proportions or parts to which each is entitled, and if real estate, give a description, as near as may be, of the land to which each is entitled;* and such persons may demand and recover their respective shares from the executor or administrator, or any other person having the same; and *such decree shall at once be recorded in the office of the register of deeds in every county in this state in which are situate any of the lands described in such decree;* and such register of deeds shall enter in his reception book the name of the deceased as grantor, and the names of the heirs or legatees as grantees, and shall make in such reception book so many separate grantor and grantee entries for such decree as there are persons taking under the same in such county." (Italics supplied.)

The statutes governing the descent of property at the time of decedent's death are found in G. S. 1878, c. 46, as amended by L. 1883, c. 58, and L. 1887, c. 52, which so far as here material reads:

"§ 1. **Descent of lands not devised.** When any person dies seized of any lands, tenements or hereditaments, or of any right thereto, or entitled to any interest therein, in fee-simple or for the life of another, not having lawfully devised the same, they shall descend in the following manner:

"§ 2. **Right of surviving husband or wife in homestead.** The surviving husband or wife shall also be entitled to hold for the term of his or her natural life, free from any testamentary or other disposition thereof, to which such survivor shall not have assented in writing, and free from all claims on account of the debts of the deceased, the homestead of such deceased, as such homestead is or may be defined in the statutes relating to homestead exemptions.

"§ 3. **Descent of other lands—surviving husband or wife—children, etc.** Such surviving husband or wife shall also be entitled to and shall hold in fee-simple, or by such inferior tenure as the deceased was at any time during coverture seized or possessed thereof, one equal, undivided one-third of all other lands of which the deceased was at any time during coverture seized or possessed, free from any testamentary or other disposition thereof to which such survivor shall not have assented in writing, but subject, in its just proportion with the other real estate, to the payment of such debts of the deceased as are not paid from the personal estate. The residue of such real estate, *or, if there be no surviving husband or wife of such intestate, then the whole thereof,* shall descend, subject to the debts of the intestate, in the manner following: [thereafter follow provisions for the manner in which the property shall descend]." (Italics supplied.)

It is obvious that under the statutes then existing the fee in the homestead passed as part of the residue of the real estate under § 3, subject only to the life estate of the husband or wife if there was one surviving the owner of the land. It was considered to

be part of the decedent's estate. The only part thereof which was exempt from the debts of the decedent was the life estate which passed to the surviving spouse. The fee was not only part of the estate, but it consisted of assets of the estate for the purpose of discharging debts of the decedent. If the decedent left no spouse, the homestead descended and was part of the assets of the estate the same as any other real estate.

L. 1889, c. 46, establishing a probate code, extended the homestead exemption so as to include children or issue of a deceased child, but not collateral heirs. Section 63(4) reads:

"If there be no surviving husband or wife and no children or the issue of any deceased child living, such homestead shall descend in like manner as other property of the deceased and subject in like manner to the debts and claims against the estate of the deceased."

Under this section and later statutes, if no husband or wife, child, or issue of deceased children survive the decedent, the homestead descends the same as any other real estate and is part of the assets of the estate for the payment of debts.

In McCarthy v. Van Der Mey, 42 Minn. 189, 192, 44 N. W. 53, 54, we said:

"* * * But the jurisdiction of the probate court over the fee of the homestead premises, subject to the homestead right or estate, cannot be doubted, because, until the late act [referring to L. 1889, c. 46, § 63], it was part of the estate of a deceased person; * * *."

The court also holds that the fee was assets of the estate for the payment of debts.

In McGowan v. Baldwin, 46 Minn. 477, 480, 49 N. W. 251, 252, we said:

"Under the act of 1876, (Gen. St. 1878, c. 46, § 2,) the fee of the homestead is to be deemed a part of the assets of the testator, subject to the life-estate of the widow. It may therefore be applied to the payment of his debts."

In Dunn v. Stevens, 62 Minn. 380, 64 N. W. 924, 65 N. W. 348, we held that L. 1889, c. 46, was unconstitutional insofar as it affected debts contracted prior to its enactment.

In Doran v. Kennedy, 122 Minn. 1, 141 N. W. 851 (affirmed, 237 U. S. 362, 35 S. Ct. 615, 59 L. ed. 996), the contention was that a governmental homestead was not part of decedent's estate and that the probate court could not authorize a sale of it. In rejecting the contention, we said (122 Minn. 7, 141 N. W. 852):

"* * * The property was part of the estate of deceased. The probate court had jurisdiction over it."

The question involved in that case was probably not the same as that involved here, in that there is a distinction between the governmental homestead, which might exceed in area the homestead as defined by our exemption law and the laws of descent, but the court in the above case makes no distinction between any part of the land insofar as the jurisdiction of the probate court is concerned.

In the case of Fraser v. Farmers' & M. Sav. Bank, 89 Minn. 482, 95 N. W. 307, one Wilson died testate, leaving by will his homestead to his widow, and the residue of his property, real and personal, to his widow and two sisters, share and share alike. The homestead was set apart to the widow by the order or decree of the court. Later, a final decree of distribution was entered in which all of decedent's land, excepting the homestead, was described. The pertinent part of the final decree reads (89 Minn. 483, 95 N. W. 307):

"The court finds as conclusions of law that the said Florence A. Wilson, Rachel D. Wright, and Anna M. Raymond are the owners in fee simple of all the real property hereinbefore described, *and of all the real property of which the said testator died seised, whether the same is described in the inventory herein or not.*"

Defendant Robbins obtained a judgment against the two sisters, and it was his contention that the homestead, as well as the other real estate, was covered by the last clause of the final decree and that he therefore owned a two-thirds interest therein. The court

rejected these claims, on the ground that the court's decree setting apart the homestead to the widow took it out of the final decree. However, it is apparent that the court considered the homestead a part of the estate of the decedent, for it said (89 Minn. 484, 485, 95 N. W. 307, 308):

"* * * If the homestead was covered and included in the final decree, the judgment debtors, legatees in the will, became owners of two-thirds thereof, against which the judgment may be enforced.

"* * * The widow claimed the land, both under the will and the statutes in such cases provided, and by the decree of the probate court she became possessed of an absolute title thereto."

Inferentially, at least, the court said that if it had been assigned by the final decree instead of by a decree setting it apart to the widow, the final decree would have been binding on all parties.

It has been held that the homestead of an incompetent is part of the estate of the ward and that the probate court has jurisdiction over it. Hayes-Lucas Lbr. Co. v. Johnson, 172 Minn. 504, 215 N. W. 857.

In the case of Long v. Willsey, 132 Minn. 316, 156 N. W. 349, the probate court of Fillmore county in 1909 made its final decree in the estate of William A. Miller, containing this provision:

"* * * Said above described homestead in the village of Preston [describing it], and said above described 80 acres of land in Crow Wing county in said state, to the said Sarah J. Miller in fee; all as provided by the terms of the last will and testament of said deceased."

Thereafter, Sarah J. Miller died intestate. Appellant, a daughter of William A. Miller by a former wife, in 1914 petitioned the probate court of Waseca county in the matter of the estate of Sarah J. Miller, praying that upon the final distribution of the estate of Sarah J. Miller the court assign to her such share of the estate as she might be entitled to. Appellant was not an heir of Sarah J. Miller. The probate court held that she was not entitled to share in the estate of Sarah J. Miller. She appealed to the district

court from the final decree of the probate court, and in affirming the district court we said (132 Minn. 318, 156 N. W. 349):

"We deem the finding to the effect that the final decree in the estate of William A. Miller vested all of his property in Sarah J. Miller 'in fee' decisive of this appeal. That decree is not subject to a collateral attack in this action. * * * The only matter in the whole decree affording any sort of support for a suggestion that the whole estate of William A. Miller was not vested absolutely in the widow, free from any legal claim of his children, either in the nature of a remainder or of a precatory trust, is found in the last clause in the second paragraph dealing with the homestead, the wood lot, and the land in Crow Wing county assigning the same 'to the said Sarah J. Miller in fee; all as provided by the terms of the last will and testament of said deceased.' We do not consider that the clause after the semicolon creates any ambiguity in the decree, so that it is necessary to read into it the terms of the will. In making the final decree of distribution of a testate the probate court necessarily construes the will upon which the decree is based. Where a court of competent jurisdiction has construed a will, such construction is binding unless set aside in a direct proceeding. * * * We do not overlook the fact that the children of William A. Miller are all named as his devisees, legatees and heirs in the recitals of the decree; but that does not tend to make uncertain either the nature of the estate assigned or the person to receive it, for the words employed in assigning the estate are those generally used to describe the highest and most absolute ownership, and unquestionably the only heir in whom the decree pretends to vest the estate is Sarah J. Miller."

Some confusion has arisen as to whether the homestead of a decedent is part of his estate, because of the language used in Wilson v. Proctor, 28 Minn. 13, 16, 8 N. W. 830, 831, where Mr. Justice Mitchell, speaking for the court, said:

"* * * We do not think that the homestead right of the widow or family of a decedent is dependent or contingent upon any formal

act of selection on their part, or upon any order or decree of any court assigning it to them. * *. * The homestead right of a widow or minor children is no new right or estate. They have no general right of selection out of the whole body of the decedent's property. Their right is simply a transmission to them, or continuance in them, of the same right previously vested in the decedent and his family at the time of his death. The right vested in the widow at the instant of the death of her husband, without any act of selection on her part, or order of the court, although one or both of these might be necessary to determine the precise boundaries of the homestead, where it was a part of a tract larger than the quantity allowed by law. The homestead, therefore, never becomes, even for an instant, a part of the estate of a decedent for the purposes of administration, so long as the homestead right continues."

Somewhat the same situation exists in the case of Nordlund v. Dahlgren, 130 Minn. 462, 153 N. W. 876, Ann. Cas. 1917B, 941. Both of these cases involved questions relating to the right of the administrator to pay out money of the estate for improvements to the homestead or taxes against it while it was occupied by the spouse of decedent. Undoubtedly, the court used the words (28 Minn. 16, 8 N. W. 832) "for the purposes of administration" in their technical or restricted meaning, which refers to the acts of the representative in collecting property, taking possession thereof and preserving it, converting it into cash, applying the proceeds to the payment of claims, and distributing the residue. Walton v. Walton, 4 Abb. App. Dec. 512, 40 N. Y. 15; Mefford v. Lamkin, 38 Ind. App. 33, 76 N. E. 1024, 77 N. E. 960; 2 Wd. & Phr. (Perm. ed.) 432-434, and Pocket Parts. See, also, McHugo v. Norton, 159 Minn. 90, 198 N. W. 141; Kern v. Cooper, 97 Minn. 509, 106 N. W. 962. This becomes more apparent when we note that Mr. Justice Mitchell concurred in the cases of McCarthy v. Van Der Mey, 42 Minn. 189, 44 N. W. 53, and McGowan v. Baldwin, 46 Minn. 477, 49 N. W. 251, *supra,* and wrote the opinion in the case of Dunn v. Stevens, 62 Minn. 380, 64 N. W. 924, 65 N. W. 348, *supra.* In no

case do we find an unqualified statement by the court that the homestead is no part of the estate. The statements in the cases mentioned are qualified, in that the court says that the homestead is no part of the estate *for the purposes of administration.*

Neither does the fact that the homestead vests immediately upon the death of the owner prevent it from being part of the decedent's estate or remove it from the jurisdiction of the probate court. The title to all real estate vests in the decedent's heirs or devisees immediately upon his death. State ex rel. Beals v. Probate Court, 25 Minn. 22; State Bank of Loretto v. Dixon, 214 Minn. 39, 7 N. W. (2d) 351; In re Estate of Taylor, 213 Minn. 509, 7 N. W. (2d) 320; Bowen v. Willard, 203 Minn. 289, 281 N. W. 256; Jenkins v. Jenkins, 92 Minn. 310, 100 N. W. 7; Patton, Titles, § 289; 3 Dunnell, Dig. & Supp. § 3567; 2 *Id.* § 2722.

Title to a decedent's personalty passes to his personal representative and constitutes the primary fund for the payment of claims. 2 Dunnell, Dig. § 2722, where we find the following language:

"* * * The distinction between real and personal property as to the mode of its succession is not founded in considerations of justice, practical convenience, or expediency, but is due wholly to the way in which the law of succession developed in England. It is an historical accident and is preserved by us merely as a matter of habit and mental inertia. In some states it has been wisely abolished."

Historically, the English probate courts had almost no jurisdiction over real estate of the decedent. The title to land passed to the heir or devisee immediately upon the death of the owner. The wills of land were not probated in the ecclesiastical courts or elsewhere. Not until 1897 (60-61 Victoria, c. 65) did parliament remedy this situation by a statute which provided that an interest in land passed to the personal representatives just as chattels had passed theretofore. Simes and Basyl, *Monographs on Probate Law* (Mich. Legal Studies, 1946, p. 448). Now, real and personal property in

England is administered in the same manner. In this country, various changes have been made, but the distinction between the passing of title of personalty and real property probably has no other basis than the historical antecedent of our law, the English law. Apparently, our courts were not willing to follow the English law to the extent that it deprived the probate court of all jurisdiction over real estate, and adopted a system under which the probate courts did have jurisdiction over real estate, but still retained the legal fiction that the title to real estate vested immediately in the heirs and devisees, while title to personalty passed to the administrator. However, regardless of this historical setting, the probate courts of our state clearly do have jurisdiction over the real estate of a decedent, and the mere fact that a part of the real estate now passes to certain designated heirs, exempt from the claims of creditors, makes it no less a part of the estate of the decedent. As has been pointed out above, if there are none of the designated heirs, that is, spouse, child, or issue of deceased children, the homestead is not only part of the estate, but is as much part of the assets of the estate as any other real estate.

In Stromberg v. Stromberg, 119 Minn. 325, 138 N. W. 428, we find the court using almost the same language with respect to personalty as Mr. Justice Mitchell used with respect to the homestead in Wilson v. Proctor, 28 Minn. 13, 8 N. W. 830, *supra*. In that case, we said with respect to the personalty which the widow may select (119 Minn. 327, 138 N. W. 429):

"The part the widow is entitled to is not to be included in the estate to be administered upon, and is not subject to the expenses of administration or the payment of proved claims, and is no part of the residue to be distributed."

The right to select such personal property is a personal one, and, if the widow fails to make such selection and the property passes by the final decree of the court, the final decree is binding upon everyone, and the widow cannot later recover such property in an

action in the district court. Rickert v. Wardell, 142 Minn. 96, 170 N. W. 915, *supra.*

In the case of In re Estate of Christianson, 191 Minn. 166, 253 N. W. 661, we had occasion to pass directly upon the question of whether or not a probate court has jurisdiction over a decedent's homestead under our present law, which has considerably extended the homestead exemption from that existing in 1888. We held that it had. In that case, the only property the decedent left was his homestead. One of decedent's children objected to the jurisdiction of the probate court on the ground that the court had no jurisdiction over the homestead. The probate court rejected this contention and decreed the land to the widow and children. On appeal, the district court reversed, holding that the probate court had no jurisdiction. We reversed the district court, distinguishing such cases as Wilson v. Proctor, 28 Minn. 13, 8 N. W. 830, and Nordlund v. Dahlgren, 130 Minn. 462, 153 N. W. 876, Ann. Cas. 1917B, 941, *supra,* saying (191 Minn. 168, 253 N. W. 662):

"We agree' with respondent that where there has been no will the homestead under our statute (2 Mason Minn. St. 1927, § 8719) goes to the children of decedent in fee subject to a life estate in the surviving spouse immediately upon the owner's death. We are in full accord with the cases' respondent cites and the language therein contained, to the effect that the homestead never for an instant becomes a part of the estate for the purposes of administration. Wilson v. Proctor, 28 Minn. 13, 8 N. W. 830; Nordlund v. Dahlgren, 130 Minn. 462, 153 N. W. 876, Ann. Cas. 1917B, 941; Rux v. Adam, 143 Minn. 35, 172 N. W. 912; In re Estate of Murphy, 146 Minn. 418, 178 N. W. 1003, 179 N. W. 728; In re Application of Lee, 171 Minn. 182, 213 N. W. 736; Tomlinson v. Kandiyohi County Bank, 162 Minn. 230, 202 N. W. 494. The homestead is not a part of the estate in that it cannot be subjected to the general creditors' claims or the expenses of administration. Yet we think the probate court has jurisdiction over the homestead for several purposes before the five-year period specified in 2 Mason Minn. St.

1927, § 8729, has run. (a) It has jurisdiction to render a decree of distribution of the homestead to establish a record title. (b) It has ancillary jurisdiction to determine who are the heirs entitled to all or a share of the homestead in the event of a dispute. (c) It has jurisdiction to determine what are the limits of, or which part of a larger tract of land constitutes, the homestead. (d) It has jurisdiction to sell the homestead, not for payment of debts, but if the parties consent and it is deemed advisable, under 2 Mason Minn. St. 1927, § 8834. Since there may be other situations in which the probate court has original jurisdiction over the homestead, the foregoing enumeration is not intended to be exclusive. For a general discussion of the probate court's original jurisdiction, see In re Estate of O'Connor, 191 Minn. 34, 40, 253 N. W. 18."

We come, therefore, to the conclusion that even though the homestead of decedent under the statutes existing at the time of the death of the decedent involved in this action could be held by the widow for the term of her life, exempt from the debts of decedent, the fee was nevertheless part of decedent's estate, subject to the jurisdiction of the probate court, and that the final decree assigning it to the widow, even though erroneous, is binding and conclusive on all those interested in the estate.

In view of the conclusions we have reached, we need not consider the effect of the denial of the petition of decedent's children to amend the original decree which was made in 1915. Nor do we pass upon the question whether L. 1943, c. 529, is applicable to the facts in this case.

Affirmed.

The opinion herein filed November 7, 1947, is hereby withdrawn, and the foregoing opinion is substituted in lieu thereof.

MAGNEY, JUSTICE (concurring).

I fully agree with the majority opinion on the merits of the case. However, I have serious doubts as to the propriety of using a declaratory judgment form of action to review a decree such as we have here. Plaintiffs seek to have the court say that the judg-

ment of the probate court was void, that it was no judgment at all, on the ground that the court erred in its disposition of the homestead. In effect, it is an appeal from a judgment. It is said in the excerpt from Borchard, Declaratory Judgments (2 ed.) 355, quoted in the majority opinion:

"* * * Perhaps it goes without saying that the declaratory action is not a substitute for a new trial or for an appeal from a former judgment deciding identical issues or issues which the court believes were necessarily passed upon."

But the author goes on to say:

"But this does not mean that when an earlier adjudication is the source of rights or contest, when it is unclear or ambiguous, or when there is a question whether it is a judgment at all, its legal effects and construction cannot be placed in issue. This has happened in an action to determine * * * that a judgment was null and void *ab initio;* * * *."

It is chiefly on the basis of the last statement, as I understand it, that the majority opinion holds that such an action as that brought here will lie. Borchard cites two cases, Lloyd v. Weir, 116 Conn. 201, 164 A. 386, and Burr v. Anglo-French Banking Corp. 149 L. T. R. 282 (K. B. 1933), in support of the statement. Lloyd v. Weir has been cited and quoted from in the majority opinion. But that case was decided under a Connecticut law which is much broader than ours. In Connecticut Sav. Bank v. First Nat. B. & T. Co. 133 Conn. 403, 409, 51 A. (2d) 907, 910, the Connecticut court said:

"* * * Our statute, which antedated the Uniform Declaratory Judgments Act, is broader in scope than that act and the statutes in most, if not all, other jurisdictions. We have consistently construed our statute and the rules under it in a liberal spirit, in the belief that they serve a sound social purpose. [Citing cases.] We have undoubtedly given a broader scope to proceedings for declaratory judgments than have the courts in many other jurisdictions."

Its interpretation of the Lloyd v. Weir case is also given in the above case, where the court says (133 Conn. 412, 51 A. [2d] 911):

"* * * in Lloyd v. Weir, 116 Conn. 201, 204, 164 A. 386, we held that in an action for a declaratory judgment the Superior Court might properly declare the effect of a probate decree as conclusively settling the rights of the parties; * * *."

In the Burr case, *supra*, the court held that in an action for declaratory judgment the court had jurisdiction to set aside a judgment against a nonexistent defendant. The plaintiffs sought to restrain defendants from enforcing that judgment on the ground that it had been obtained against a nonexistent entity. The defendants denied that the judgment debtor had no existence and contended that the present action did not lie. The court in holding that the action was proper quoted from Charles Bright and Co. Ltd. v. Sellar, 89 L. T. R. 431, 433, as follows (149 L. T. R. 282):

"* * * Actions of this nature do not invite the High Court to rehear upon the old materials. Fresh facts are brought forward, and the litigation may be well regarded as new and not appellate in its nature, because not involving any decision contrary to the previous decision of the High Court."

In our case, the facts are the same as in the original proceedings, and the present action is in its nature appellate.