In re Gerald J. DUDA and Marlene V. Duda, Paul H. Gernat, Sr., Richard A. Inzero and Marie Antoinette Inzero, Anne Pelloth, Margaret D. Rockwell, Roger E. Vigneault and Dolores M. Vigneault, Thelma Williams, Rudolph E. Patterson and Daisy M. Patterson, John A. Garrison, David Vincent Roscetti and Tsukiko Roscetti, William A. Stone and Debra S. Stone.

Bankruptcy Nos. 94–50871, 94–51042, 93–54071, 94–50883, 93–53917, 93–53930, 94–50016, 94–30469, 94–51624, 94–50570 and 91–52648.

United States Bankruptcy Court,
D. Connecticut.

May 31, 1995.

Robert G. Wetmore, Wallingford, CT, for Gerald J. Duda and Marlene V. Duda.

Ira B. Charmoy, Charmoy & Nugent, Bridgeport, CT, for Paul H. Gernat, Sr. and David Vincent Roscetti and Tsukiko Roscetti.

Francis E. Lamboley, The Lamboley Law Firm, Hamden, CT, for Richard A. Inzero and Marie Antoinette Inzero.

David O. Chittick, Monroe, CT, for Anne Pelloth.

Wilfredo Morales, Meriden, CT, for Margaret Rockwell.

Mark S. Carron, Carron and Fink, Westport, CT, for Roger E. Vigneault and Dolores M. Vigneault.

Sheri B. Paige, Wall Street Legal Services, Norwalk, CT, for Thelma Williams.

Charles S. Ambrogio, Ambrogio & Cahill, Stratford, CT, for Rudolph Patterson and Daisy M. Patterson.

Elena L. Cahill, Ambrogio & Cahill, Stratford, CT, for John A. Garrison.

Michele R. Celentano, Dimenstein & Celentano, Milford, CT, for William A. Stone and Debra S. Stone.

Richard Belford, Chapter 7 Trustee, New Haven, CT.

Byron P. Yost, Yost and Associates, Chapter 7 Trustee, New Haven, CT.

## MEMORANDUM AND ORDER ON TRUSTEES' OBJECTIONS TO EXEMPTIONS

ALAN H.W. SHIFF, Bankruptcy Judge.

Effective October 1, 1993, the Connecticut General Assembly amended the state's exemption laws to provide for the first time a homestead exemption in the amount of $75,-000.00. For the reasons that follow, I conclude that that exemption applies only to claims arising on or after the effective date of that amendment.

### BACKGROUND

Chapter 906 of the Connecticut General Statutes, entitled "Postjudgment Procedures," contains provisions relating to the enforcement of money judgments. On June 29, 1993, the Connecticut General Assembly enacted Public Act No. 93–301 (the "Act"), which amended two sections of Chapter 906.

Section 2 of the Act added a new subsection 52–352b(t), which provides:

The following property of any natural person shall be exempt:

(t) The homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it.

Section 1 of the Act reenacts several definitional provisions, including subsection 52–352a(c), which now reads:

"Exempt" means, unless otherwise specified, not subject to any form of process or court order for the purpose of debt collection.

Section 3 of the Act, from which the instant controversies arise, provides:

This act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date.

In each of these chapter 7 cases, the debtor claimed the homestead exemption and the panel trustee objected to the claimed exemption. Pursuant to a Scheduling Order entered on November 18, 1994, the parties have stipulated to the following facts:

A. Each case was filed on or after October 1, 1993, except In re Stone, Case No. 91–52648. That case was commenced under chapter 11 prior to October 1, 1993, and converted to a chapter 7 case after that date.

B. In each case, most or all of the unsecured claims arose prior to October 1, 1993.

C. In each case, the residence of the debtor or debtors is property of the estate.

D. In each case, the debtor or debtors have elected to employ the exemptions available under Connecticut law, see § 522(b), and have claimed an exemption in the equity of their residence pursuant to Section 2 of Connecticut Public Act No. 93–301, amending Conn.Gen.Stat. § 52–352b to add subsection (t), creating a $75,-000 exemption in the homestead of the exemptioner.

E. In each case, there is no lien on the residence other than one or more "security interests," as that term is defined in § 101(51).

The issues to be decided in each case other than *In re Stone* are:

A. May a debtor claim the $75,000.00 homestead exemption created by Connecticut Public Act No. 93–301 when the case was commenced after the effective date of that statute (October 1, 1993), as set forth in Section 3 of the Act, but the claims of creditors arose before that date.

B. Assuming that the answer to Issue A. is no, and further assuming that some, but not all, of the claims of unsecured creditors arose before October 1, 1993, what mechanism should be employed to provide for the claiming of the homestead exemption as to claims that arose after that date, and for the distribution of estate assets.

The issue to be decided in *Stone* is:

If a case was commenced under chapter 11 prior to the effective date of Connecticut Public Act No. 93–301 (October 1, 1993), as set forth in Section 3 of the Act, and converted to a chapter 7 case after that date, may the debtor claim the benefit of the exemption provided by that Act.

## DISCUSSION

### 1. Application of the Act to Claims Arising Before October 1, 1993

Section 522(b) provides in relevant part:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. . . .

(2)(A) any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition. . . .

■ In *In re Morzella,* 171 B.R. 485, 487 (Bankr.D.Conn.1994), Chief Judge Krechev-

sky followed the holdings of two Connecticut state courts in concluding "that the homestead exemption only applies to obligations and claims arising after October 1, 1993, the effective date of P.A. 93–301." [1] Thus, under *Morzella,* even though a case is commenced after October 1, 1993, the homestead exemption may be claimed only as against claims that arose on or after that date, and not as to claims that arose before that date. *Morzella* relied upon the Connecticut Superior Court decisions in *Centerbank v. Associated Risk Servs., Inc.,* Case No. 93–035–50–42S, 1994 WL 51183 (Conn.Super.Ct., Feb. 7, 1994) and *L. Suzio Asphalt Co., Inc. v. Ferreira Constr. Corp.,* Case No. 35–19–12, 1993 WL 448441 (Conn.Super.Ct., Oct. 19, 1993). *Morzella* also relied upon this court's decision in *In re Toronto,* 165 B.R. 746, 757–58 (Bankr. D.Conn.1994), which held, *inter alia,* that the homestead exemption could not be claimed in a case filed before the effective date of the Act. In *Toronto,* I concluded:

Under Connecticut law a statutory enactment affecting substantive rights, as Pub. Act 93–301 indisputably does, is presumed to have only prospective effect in the absence of a clear and unequivocal expression of a contrary legislative intent. Conn.Gen. Stat.Ann. § 55–3 (West 1985); *In re Judicial Inquiry No. 85–01,* 221 Conn. 625, 632, 605 A.2d 545 (1992); *Miano v. Thorne,* 218 Conn. 170, 175, 588 A.2d 189 (1991). The plain language of Pub. Act 93–301 supports a prospective application only. *See Centerbank v. Associated Risk Servs., Inc.,* 1994 WL 51183 (Conn.Sup.Ct., Feb. 7, 1994); *L. Suzio Asphalt Co., Inc. v. Ferreira Constr. Corp.,* 1993 WL 448441 (Conn.Sup.Ct., Oct. 19, 1993).

I am not persuaded by the debtors' arguments to depart from *Morzella.* I will follow that decision, and write further to address three issues raised by the debtors that were not treated at length in *Morzella* and the conversion issue raised in *Stone.*

---

**1.** The language of the Act indicates that it applies to claims or obligations arising *on or after* October 1, 1993. I also note that although the objection in *Morzella* was by an unsecured creditor, the trustees have standing to raise objections in

their capacity as representatives of the estate. *See* § 323(a); *First Nat'l Bank of Mobile v. Norris,* 701 F.2d 902, 904 (11th Cir.1983); *In re Van Rye,* 179 B.R. 375, 378 (Bankr.D.Mass.1995).

### a. The language

The debtors do not appear to argue that Section 3 (i.e., "lien for any obligation or claim arising on or after said date") should be read to make the homestead exemption applicable to a *lien* arising on or after October 1, 1993, rather than to an *obligation or claim* arising on or after that date. In any event, the latter reading is more faithful to the statute's plain language and is in accord with the authority cited above.[2] Instead, the debtors argue that the only portion of Section 3 of the Act that is operative in the bankruptcy exemption context is the initial clause, i.e., "[t]his act shall take effect October 1, 1993." That language, taken alone, created a homestead exemption which existed under state law that was "applicable on the date of the filing of the petition" within the meaning of § 522(b)(2)(A). The second clause, "and shall be applicable to any lien for any obligation or claim arising on or after said date," merely creates an exception to the general effective date as to liens for claims arising before the effective date. Because there are no judicial liens affecting the debtors' residences, the debtors argue, the exception created by the second clause does not apply.

■ I disagree. Parts of a statute must be read so as not to be in conflict and to give effect to each. *In re Bellamy,* 122 B.R. 856, 862 (Bankr.D.Conn.), *aff'd,* 132 B.R. 810 (D.Conn.1991), *aff'd,* 962 F.2d 176 (2d Cir. 1992); *Pintavalle v. Valkanos,* 216 Conn. 412, 418, 581 A.2d 1050 (1990). Further, statutes are to be construed so as to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve; a bizarre result signals an erroneous construction. *In re Valerie D.,* 223 Conn. 492, 534, 613 A.2d 748 (1992); *Jones v. Mansfield Training Sch.,* 220 Conn. 721, 726, 601 A.2d 507 (1992). Courts must presume that the legislature did not intend to enact meaningless provisions. *Prospect Grove Condominium Ass'n v. Hampton (In re Hampton),* 142 B.R. 51, 52 (Bankr.D.Conn. 1992).

The first and second clauses of Section 3 are separated by the conjunction "and." That conjunction denotes not an exception but rather an addition to the previous clause. As such, the second clause must be read as supplementing or further describing the first clause, not as carving something from it. Further, "liens for obligations or claims" are not merely a subset of the possible universe of enforcement devices to which § 52–352b(t) could apply. Rather, that statute is concerned *only* with liens for claims or obligations.[3] There is no avenue for a judgment creditor to enforce its collection rights against real property other than obtaining a lien—whether a prejudgment attachment or a post-judgment lien—and either foreclosing that lien, seeking an execution sale, or waiting to be paid off when the property is sold. The definition of "exempt"—"not subject to any form of process or court order for the purpose of debt collection," *see* Conn.Gen. Stat.Ann. § 52–352a(c)—indicates that the entire purpose of the statute is to prevent judgment creditors from enforcing lien rights

2. I note that two bills were introduced in the 1995 General Assembly to clarify Section 3's language. One (H.B. 6213) would have made the Act "applicable to any lien for any obligation or claim, provided such obligation or claim arises on or after October 1, 1993." That is the reading I adopt. The other bill (H.B. 5004) would have made the Act "applicable to any lien filed on or after October 1, 1993, with respect to any claim arising before, on or after said date." If H.B. 5004 had been enacted, the exemption would likely be available to at least those debtors who commenced cases on or after H.B. 5004's effective date, and by argument from legislative intent, could perhaps be found to be available to debtors who commenced their cases on or after October 1, 1993. *See Turner v. Turner,* 219 Conn. 703, 717, 595 A.2d 297 (1991) ("'[A]n amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act."). However, neither bill was reported out of committee, so I am left to construe the Act's existing language and legislative history.

3. The legislative history supports that reading. *See, e.g.,* Conn.Gen. Assembly House Proceedings 1993, Vol. 36, Part 30, 10834 (June 4, 1993) (statement of Rep. Samowitz) ("This just involves liens as far as the Homestead Exemption in paragraph T. The other portions ... could deal with different classes of debt. But as far as [subparagraph] T goes, ... that only deals with liens.").

against the property.[4] Reading the first and second clauses together, it is apparent that the homestead exemption was *effective* on October 1, 1993, but only as to claims arising on or after that date. Thus, even in these cases, the exemption is effective and available to the debtors as against any such post-effective date claims.[5]

■ The code does not alter that result. Section 522(b)(2)(A) permits the debtor to claim as exempt "any property that is exempt under ... [applicable] State ... law." That section requires that applicable state law provide the definition of "exempt." Under Connecticut law, "exempt" means not subject to process or court order for the purpose of debt collection. But the second clause of Section 3 provides that the debtors' homestead property *is* subject to process and court orders—i.e., judicial liens—for claims or obligations that arose before October 1, 1993. The debtors' property is therefore not "exempt" under applicable state law as against such pre-effective date claims. *See Owen v. Owen (In re Owen)*, 961 F.2d 170, 172–73 (11th Cir.) (property was not exempt from foreclosure of a judicial lien that predated the property's acquisition of homestead status), *cert. denied,* —— U.S. ——, 113 S.Ct. 659, 121 L.Ed.2d 584 (1992). If that result appertains under state law, then it does so as well under § 522(b)(2)(A). *In re Butcher,* 75

B.R. 441, 442–43 (E.D.Tenn.1987), *aff'd,* 848 F.2d 189 (6th Cir.1988).

■ The debtors concede that the second clause of Section 3 is intended "to protect the rights of holders of liens which arose *or could arise* for obligations or claims occurring before October 1, 1993." *See* Memorandum, filed January 13, 1995, at p. 2 (emphasis added). While it is true that the automatic stay prohibits unsecured creditors from proceeding to obtain judicial liens against estate property, *see* § 362(a)(4), (c)(1), the *quid pro quo* for the stay is that all of the debtors' nonexempt property will be distributed to those unsecured creditors who hold claims which could have been satisfied from that property but for the commencement of the case. The commencement of the case essentially accelerates what would have happened in the absence of a filing, i.e., the unsecured creditors would have proceeded to judgment and liquidated the property for their benefit, but does so in a way that prevents the "race of diligence" that results when unsecured creditors fight to seize a limited pool of estate assets. *Cf.* § 544(a)(1), (2); *Nadel v. Mayer (In re Mayer)*, 167 B.R. 186, 189 (9th Cir. BAP 1994) ("The filing of the petition constitutes an attempt by the trustee to levy on the [homestead] property. It is this hypothetical levy the court must focus on in analyzing [the debtor's] entitlement to a homestead exemption.").[6]

---

**4.** Some Connecticut courts have held that the new homestead exemption does not prohibit judicial liens from *attaching* to the exempt portion of the residence, but only prohibits the forced sale of the homestead property. *See, e.g., Dunbar v. Dunbar,* Case No. 528800, 1994 WL 174409 at *2 (Conn.Super.Ct., Apr. 28, 1994); *L. Suzio Asphalt Co., Inc. v. Ferreira Constr. Corp., supra,* 1993 WL 448441 at *2. I do not address the issue of whether the exemption could be used to avoid a judicial lien where no action to enforce the lien was pending. *See, e.g., Resolution Trust Corp. v. Moreland (In re Moreland)*, 21 F.3d 102 (6th Cir.) (a lien may not be avoided where no judicial sale or involuntary execution is pending), *cert. denied,* —— U.S. ——, 115 S.Ct. 378, 130 L.Ed.2d 328 (1994). The Bankruptcy Reform Act of 1994, in adding a definition of impairment in § 522(f)(2)(A), appears to permit avoidance of a lien even though no enforcement action is pending. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, § 303 (1994); Section–By–Section Description, 140 Cong.Rec. H10752–01, 10769 (October 4, 1994).

**5.** Under the exemption scheme adopted in Section 3 of this Memorandum and Order, these debtors are entitled to claim a homestead exemption of $75,000 less the pre-October 1, 1993 unsecured claims.

**6.** I acknowledge that § 544(a)(1) and (2), affording the trustee the rights of hypothetical judicial lien or execution holders, presume that the trustee extended credit "at the time of the commencement of the case." Section 544 is designed to permit the trustee to attack secret liens and other prepetition transfers. *See* 4 Lawrence P. King, ed., COLLIER ON BANKRUPTCY ¶ 544.01 at p. 544–3 (15th ed.1995). The trustees need not rely on their § 544 powers in the instant cases, because the residences in question are already property of the estate, and may be exempted from the estate only in accordance with § 522(b). *Cf. First Nat'l Bank of Mobile v. Norris,* 701 F.2d 902, 904 (11th Cir.1983) ("In objecting to the claimed exemptions ... the trustee was not using the avoidance powers of section 544, but was acting as the 'representative of the estate' under

The issue here is strikingly similar to that recently considered by the court in *In re Porter,* 182 B.R. 53 (Bankr.M.D.Fla.1994). There, the court considered the availability of an exemption where the act creating it provided: "This Act applies only to an attachment, a garnishment, or other legal process that arises as a result of a contract, a loan, a transaction, a purchase, a sale, a transfer, or a conversion occurring on or after October 1, 1993." On the basis of that language and the legislative history, the court concluded that "[t]he amendments under the Act are prospective and are not applicable to debts incurred before the date of the enactment," and sustained the objections to the claimed exemptions. *Id.* at 55.

### b. Extrinsic aids to statutory construction

■ The debtors argue that their reading of Section 3 is supported by legislative history suggesting an intent to provide relief to Connecticut homeowners in a troubled economy. *See* Memorandum, filed January 13, 1995, at nn. 12 & 13, pp. 5 & 6. It is axiomatic under both federal and Connecticut law that courts may not employ legislative history to vary the plain language of a statute. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *Sanzone v. Bd. of Police Comm'rs of the City of Bridgeport,* 219 Conn. 179, 187, 592 A.2d 912 (1991) ("To determine the collectively

expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further."). Section 3's language is plain and unambiguous.

■ The ultimate goal of statutory construction is to discern legislative intent. Assuming *arguendo* that the Act's words alone are insufficient to illuminate that intent, its meaning may be clarified by the legislative history and circumstances surrounding its enactment, the legislative policy it was designed to implement, and its relationship to existing law covering the same general subject matter. *Frillici v. Town of Westport,* 231 Conn. 418, 431–32, 650 A.2d 557 (1994). As for legislative history, a statement on the House floor by the Act's sponsor indicates that legislator's intent that the Act not apply to pre-October 1, 1993 unsecured debts. *See Morzella, supra,* 171 B.R. at 487 ("'We are not talking about anything here that is retroactive. It takes effect with [respect to] any unsecured loans that occur after the [effective] date....'" (quoting Statement of Representative Holbrook, Conn. Gen. Assembly House Proceedings 1993, Vol. 36, Part 30 (June 4, 1993) (the "House Proceedings"), at 10824, 10855–56).[7] Thus, even if the Act's plain meaning is not clear, that statement, which appears to be the only direct reference to the Act's effective date, is entitled to great weight. *See State v. Guckian,* 27 Conn.App. 225, 237, 605 A.2d 874, 880 (1992) (a statement on the floor by a bill's sponsor is entitled to particular weight), *aff'd,* 226 Conn. 191, 627 A.2d 407 (1993).

As for legislative policy, there is no doubt that, as the debtors point out, the Act was intended to provide relief to homeowners in a troubled economy and to bring Connecticut

... § 323, with the capacity to sue and be sued.") (footnote omitted). By analogy, however, the existence of § 544 undercuts the debtors' argument that the unsecured creditors should be treated as though they could never obtain a judicial lien due to the filing of a bankruptcy petition.

**7.** I note that the House debate contains the following statement by Representative Farr: *"Those liens could be in existence prior to the effective date of this act"* (emphasis added). House Proceedings at 10831. However, the context of that

statement indicates that "those liens" refers to the consensual and statutory liens which are, pursuant to subsection (t), deducted from the value to which the homestead exemption may attach. The statement was made in connection with an amendment introduced by Representative Samowitz to protect consensual and statutory liens in accordance with federal bankruptcy law. *See* House Proceedings at 10826; *accord L. Suzio Asphalt Co., Inc. v. Ferreira Constr. Corp., supra,* 1993 WL 448441 at *1.

law in line with that of other states which generally provide some homestead exemption or tenancy by the entirety protection. There is also no doubt that the Act was intended to be applicable in bankruptcy proceedings. *See, e.g.,* Statement of Representative Radcliffe, House Proceedings at 10858 ("[The Act] provides protection for a princip[al] residence in the event of a bankruptcy filing which everybody hopes would be avoided."). The Act's plain meaning will provide homeowners a measure of relief in troubled economic times by protecting the exempt portion of the equity in their homes from foreclosure to the extent of post-Act obligations which ripen into judgment liens. The legislative statements relied upon by the debtors should be read to refer to that more limited, but nevertheless significant, relief.[8]

If I were to adopt the debtors' construction, other inconsistencies with the legislative history and policy would emerge. For example, the debtors concede that the General Assembly *did not* intend the homestead exemption to provide immediate relief to those Connecticut homeowners who did not file a bankruptcy petition. If that legislative body wished to provide immediate relief to debtors at the expense of existing creditors, why would it not have simply provided an effective date and eliminated the second clause of Section 3, or even expressly stated its intent that existing claims would be subject to the exemption?[9] There is no evidence of a legislative intent to encourage bankruptcy filings by making the exemption available as to existing claims in bankruptcy but not in a state court foreclosure proceeding. *See, e.g.,* Statement of Senator Jepsen, Conn.Gen. Assembly Senate Proceedings 1993, Vol. 36, Pt. 12, 4466 (June 7, 1993) ("The largest and most important component [of the Act] is that it creates a $75,000 exemption for those who are losing their house in foreclosure."). Indeed, some concern was expressed that homeowners not be encouraged to file bankruptcy petitions.[10] There is also a question as to whether a state exemption which by its terms was effective only in bankruptcy would be "available" to the debtors within the meaning of § 522(b)(2)(A).

Finally, I note that, according to the legislative history, Connecticut was one of only six states with no homestead exemption and of those one of two that did not recognize a tenancy by the entirety. The Act did not merely increase an existing exemption, it created that protection in the form of a very substantial homestead exemption. It is therefore not surprising that the General Assembly sought to ease the impact of the Act on lenders who had extended credit in reliance on settled law which provided no homestead protection. That approach is consistent with the law of several other states, in which even amendments to existing homestead exemptions do not apply to then-existing debts. For example, a 1977 statute increasing the New York homestead exemption from $2,000 to $20,000 provided that the amendment would "not affect the application

8. Descriptions of the operation of the exemption in a bankruptcy case appear to have been based upon the assumption that only post-effective date claims were at issue so that the exemption would be fully available to the debtor. *See* House Proceedings at 10844–46. Other references to bankruptcy proceedings simply explain that the Act protects consensual and statutory liens to mirror the bankruptcy code. *See, e.g.,* House Proceedings at 10826.

9. If, as the debtors argue, *see* Memorandum, filed January 13, 1995, at pp. 5–11, the Act could have been made applicable to existing claims without violating constitutional prohibitions, and if as they also argue the General Assembly intended to afford homeowners the broadest and most immediate relief possible, then the General Assembly would have made the homestead exemption effective as against pre-effective date claims both inside and outside of bankruptcy.

10. The record suggests that the exemption was motivated at least in part because the bankruptcy code already permitted a homestead exemption, as did the law of almost all other states. *See* Statement of Attorney Douglas McDade before the Joint Committee on the Judiciary, Part 5, pp. 1514–21, 1568–72 (March 5, 1993). At least some legislators may have believed that the lack of a Connecticut homestead exemption could encourage unnecessary bankruptcy filings. *See* Statement of Rep. O'Neill, *id.* at 1516–17 ("Is it your impression that a lot more people have utilized bankruptcy in Connecticut because we have no other exemption[?]"). Other legislators expressed concerns over possible abuses in bankruptcy. *See* Statement of Representative Jarjura, House Proceedings at 10846.

of property to the satisfaction of a money judgment for a debt contracted before it takes effect." The bankruptcy courts held that the increased exemption was not available to avoid liens securing debts incurred prior to the amendment's effective date. *In re Ventura,* 65 B.R. 29, 30 (Bankr.N.D.N.Y. 1986); *In re Eipp,* 66 B.R. 1, 2 (Bankr. N.D.N.Y.1984). *See also In re Porter, supra,* 182 B.R. 53, 55 (Florida law); *Goldsby v. Stewart,* 46 B.R. 692, 694 (S.D.Ala.1983) (Alabama law); *In re Murillo,* 4 B.R. 612, 613 (Bankr.C.D.Cal.1980) (California law); *cf. In re Johnson,* 69 B.R. 988, 994 & n. 9 (Bankr. D.Minn.1987) (amendment increasing size of rural homesteads was applied to existing debts where statute merely provided an effective date and where previous statute protecting existing debts had been repealed).

### c. *Owen v. Owen*

The debtors' third argument turns on the Supreme Court's decision in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).[11] The *Owen* Court held that § 522(f) permitted the avoidance of a judicial lien that impaired a homestead exemption, even though the lien predated the time that the property became homestead property, and so would not have been subject to the homestead exemption under Florida law. *Owen* directed bankruptcy courts considering lien avoidance proceedings to "ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien." *Id.* at 312–13, 111 S.Ct. at 1837.

 *Owen* does not support the debtors' position. While federal law governs the avoidance of judicial liens pursuant to § 522(f), state law determines the availability of exemptions in the first instance where the state has opted out of the federal exemption scheme or where the debtor chooses the state scheme. *See David Dorsey Distrib., Inc. v. Sanders (In re Sanders),* 39 F.3d 258, 260–61 (10th Cir.1994); *In re Henderson,* 18

F.3d 1305, 1309 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994); *In re Hilt,* 175 B.R. 747, 753 (Bankr. D.Kan.1994). Under the Supremacy Clause, any state statute which limits the availability of an exemption because of the existence of the targeted judicial lien must yield to § 522(f). The instant proceedings involve only § 522(b), which by its terms defers to state law.

*Owen* involves a state law limitation based on the establishment of the targeted judicial lien, whereas in the instant cases, the limitation inheres in the state law which creates the exemption. Section 522(f) permits a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor *would have been entitled under subsection (b) of this section ...*" (emphasis added). The first step under the *Owen* analysis is to determine whether, ignoring the particular judicial lien in question, the debtor is entitled to an exemption. *In re Sanders, supra,* 39 F.3d at 261; *In re Onyan,* 163 B.R. 21, 26 (Bankr.N.D.N.Y.1993) (where New York law did not permit a debtor to claim a homestead exemption to the extent of any purchase money loan, a judicial lien securing the loan could not be avoided); *In re Ventura, supra,* 65 B.R. at 31 ("Debtor's reliance on Code § 522(f) is misplaced, as the applicability of the section necessarily depends upon the existence of a relevant ... exemption."). In *Owen,* had the judicial lien in question never existed, the debtor would have been entitled to claim the full homestead exemption. An attribute of the lien, i.e. that it attached before the property acquired homestead status, was the basis for the creditor's argument that it was not subject to avoidance.

By contrast, in these cases are no circumstances under which the debtors would have been entitled to claim a $75,000 homestead exemption because state law defined the ex-

---

11. The debtors assert that the instant issue is one of first impression in the district because of the statement in *Morzella,* 171 B.R. at 489 n. 4, that the proceeding at issue there did not involve any of the issues addressed by the Court in *Owen.* *See* Debtors' Memorandum, filed January 13,

1995, at p. 2. Clearly, that statement was simply intended to observe that *Owen* was not implicated by the issue before the court in *Morzella.* *Morzella* addresses precisely the same issue as addressed here.

emption so that it was not available to these debtors on the petition date as against pre-effective date claims. Because the Act is by its terms inapplicable to *unsecured claims* that predate its effective date, the unavailability of the exemption does not depend upon the existence of a particular judicial lien. *Accord In re Streeper*, 158 B.R. 783, 788 (Bankr.N.D.Iowa 1993) (under *Owen*, where the Iowa homestead exemption was inapplicable to debts created before the acquisition of the homestead and to debts incurred for improvement of the homestead, the debtor could not avoid a judicial lien securing such debts because "[a] homestead subject to a lien for [such] debt[s] would not be exempt if the lien were avoided.").

Section 522(f) targets an actual prepetition judicial lien, while § 522(b)(2)(A) turns on whether the exemption is available as against unsecured creditors on the petition date. In *Owen*, Florida's homestead law would operate against unsecured creditors on the petition date, because the Florida law exception applied only to a judicial lien that predated the property's acquisition of homestead status, and the property had that status on the petition date. The debtor thus properly claimed a homestead exemption as against unsecured creditors. *See In re Owen*, 64 B.R. 258, 259 (Bankr.M.D.Fla.1986). Here, the exemption is ineffective as to pre-effective date unsecured claims.

The debtors also rely on the Fifth Circuit's decision in *Tower Loan of Mississippi v. Maddox (Matter of Maddox)*, 15 F.3d 1347 (5th Cir.1994). That court relied on *Owen* to hold that nonpossessory, nonpurchase-money liens could be avoided pursuant to § 522(f)(1)(B), even though under state law the exemptions were subject to those liens. Like *Owen*, however, *Maddox* simply held that where a federal statute provides for the avoidance of certain liens, state laws that

define exemptions in such a way as to protect those liens must yield to the conflicting federal statutes. The court held: "[A]lthough states remain free to define the property eligible for exemptions under § 522(b), the particular liens that may be avoided on that property are determined by [§ 522(f) ]." *Id.* at 1356. That holding does not impact on the instant cases, which turn on a state law definition of an exemption under § 522(b), and not on the avoidance of a lien under § 522(f).

■ *Owen* notes that "[n]othing in [§ 522(b) ] (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." 500 U.S. at 308, 111 S.Ct. at 1835. More specifically, "nothing in section 522 suggests that the state cannot determine exemptions according to the date debts were incurred, *i.e.*, allow different amounts for the exemption fixed by the date of the debts, if that is the state law at the time the petition is filed." *First Nat'l Bank of Mobile v. Norris*, 701 F.2d 902, 905 (11th Cir.1983). The General Assembly drafted the Act so that the scope of the homestead exemption would be restricted in that it would not apply to pre-existing debts. That restriction does not conflict with federal law and thus must be applied in these cases.

■ Because I have concluded that the trustees' position is correct, I need not consider the potential constitutional problems which might be associated with adopting the debtors' proposed construction. *See, e.g., Bartlett v. Giguere (In re Bartlett)*, 168 B.R. 488 (Bankr.D.N.H.1994); *In re Johnson, supra*, 69 B.R. at 990–94.[12] I note, however, that courts will avoid interpreting a statute in a way that places it in constitutional jeopardy if that can be done without doing violence to a statute's plain language. *See*

---

12. The interference with preexisting contract rights is more substantial where a state enacts a substantial homestead exemption for the first time. Further, it does not necessarily follow that an unsecured creditor's contract rights are not impaired by a state law that removes a debtor's property from the creditor's reach. An unsecured creditor is not without rights where a debtor transfers its assets prior to the attachment of a judicial lien. In most, if not all states, and

under the bankruptcy code, unsecured creditors or their representatives have the right to maintain an action to recover property that a debtor transfers for less that a reasonably equivalent consideration. Unsecured creditors may also resort to an involuntary bankruptcy proceeding in appropriate circumstances, thus enabling a trustee to invoke judicial lien creditor powers under § 544(a)(1) and preference and fraudulent transfer avoidance powers under §§ 547 and 548.

*United States v. Security Indus. Bank,* 459 U.S. 70, 79–82, 103 S.Ct. 407, 412–14, 74 L.Ed.2d 235 (1982); *Red Rooster Constr. Co. v. River Assocs., Inc.,* 224 Conn. 563, 571, 620 A.2d 118 (1993).

### 2. Cases Converted On or After October 1, 1993

Section 348 provides in relevant part:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

(b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.

(c) Sections 342 and 365(d) of this title apply in a case that has been converted under section 706, 1112, 1208, or 1307 of this title, as if the conversion order were the order for relief.

■ The Stone case was commenced as a chapter 11 case prior to October 1, 1993, and converted to chapter 7 after that date. The plain language of the code dictates that because conversion does not effect a change in the filing date for the purposes of § 522(b)(2)(A), a change in the substantive exemption law occurring postpetition but preconversion will not be applicable in the converted case. *See* § 348(a). Courts have adopted that reasoning in the context of both a conversion from chapter 11, *see, e.g., Rigby*

*v. Hall (In re Hall),* 1 F.3d 853, 855 (9th Cir.1993), *op. withdrawn,* 41 F.3d 502 (1994), *superseding op. issued,* 42 F.3d 1399 (1994);[13] *Stinson v. Williamson (Matter of Williamson),* 804 F.2d 1355, 1359 (5th Cir. 1986); *Kaplan v. Primerit Bank (In re Kaplan),* 97 B.R. 572, 575–76 (9th Cir. BAP 1989); *In re Butcher, supra,* 75 B.R. at 442–43; *In re Thurmond,* 71 B.R. 596, 598 (Bankr.D.Or.1987), and a conversion from chapter 13, *see, e.g., Marcus v. Zeman (In re Marcus),* 1 F.3d 1050, 1051–52 (10th Cir. 1993) (distinguishing *Armstrong v. Lindberg (In re Lindberg),* 735 F.2d 1087 (8th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984), which involved a postpetition change in the facts, not the substantive law, relating to a claimed exemption); *In re Schoonover,* 147 B.R. 430, 432–33 (Bankr. S.D.Ohio 1992); *In re Stroble,* 127 B.R. 372, 374 (Bankr.W.D.Va.1991). The Stones may therefore not claim the benefit of the Act even as to claims which arose on or after October 1, 1993.

### 3. Determination of Exemption Amount in Cases Filed On or After October 1, 1993

■ The *Morzella* court adopted a method of calculating the exemption amount where some or all of the claims predate October 1, 1993:

> Under this method, the debtor is entitled to the exemption amount allowed by the exemption statute in effect as of the commencement of the case, minus the aggregate of all claims pre-dating the amendment, with the aggregate limited to the amount of the increase in the exemption.

*Morzella, supra,* 171 B.R. at p. 489. The debtors "have no quarrel with the [exemption] scheme espoused by Judge Krechevsky in *Morzella.*" Memorandum at p. 11. Nor does this court. That exemption scheme accords fair treatment to debtors and creditors, and is adopted.[14]

---

**13.** The Ninth Circuit's unpublished superseding opinion did not alter its conclusion in the original opinion that applicable state exemption laws are determined as of the date of filing a chapter 11 petition, rather than the date of conversion to chapter 7. *See* 1994 WL 681025 at **2.

**14.** I address only the appropriate exemption amount and not the method of distribution to creditors. As the trustees correctly argue, the method of distribution of estate assets to pre- and post-effective date creditors is not properly resolved in these proceedings to which only the

## ORDER

For the foregoing reasons, the objections of the trustees to the homestead exemptions claimed by the debtors in these cases are SUSTAINED, and IT IS SO ORDERED.

AND IT IS FURTHER ORDERED, that to facilitate the administration of these cases, those of the debtors who desire to amend their schedules to claim the homestead exemption available under § 522(d)(1) are directed to do so within 30 days after the date of this Memorandum and Order. *See* Rules 1009(a), 9006(c)(1) Fed.R.Bankr.P. In those cases in which no such amendment is filed, the trustees are directed to determine the appropriate exemption and serve proposed orders upon the debtors, who may object within 10 days. In the absence of such an objection, those orders will enter without a hearing.

R. Richard Croce, Purtill, Purtill & Pfeffer, Glen Lochen, Glastonbury, CT, for trustee-plaintiff.

Thomas A. Virgulto, Mongillo & Insler, New Haven, CT, for defendant John Deere Indus. Equipment Co., Inc.

trustees and debtors are parties. *See* Reply Memorandum filed January 30, 1995, at pp. 6–7. *Cf. In re Van Rye,* 179 B.R. 375, 378 (Bankr. D.Mass.1995) (exemption would be reduced by pre-exemption unsecured claims, but assets would be distributed ratably among all creditors).

