### In re Mark STEWART & Brenda Stewart, Debtors.

### Bankruptcy No. 99–10237–MWV.

United States Bankruptcy Court,
D. New Hampshire.

Feb. 29, 2000.

---

Michael S. Askenaizer, Nashua, NH, for Chapter 7 Trustee.

Mark P. Cornell, Concord, NH, for Debtors.

Andrew Livernois, Office of the Attorney General, Concord, NH for the State of New Hampshire.

### *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

### I. BACKGROUND

Before the Court is an objection to exemptions filed by Michael S. Askenaizer, the Chapter 7 trustee in the above-captioned bankruptcy case (the "Trustee"). The Court held a hearing on the Trustee's objection on October 29, 1999 and took the matter under advisement. Although the Trustee's objection raises significant legal issues regarding the intersection of New Hampshire and federal bankruptcy law, the factual underpinnings of this matter are straightforward and not in dispute.

On January 29, 1999, Mark and Brenda Stewart (the "Debtors") filed a petition for bankruptcy under Chapter 7. They scheduled three significant financial assets: an annuity in the amount of $28,276.53 and two IRAs totaling $14,727.27. In addition, the Debtors claimed all three assets as exempt pursuant to New Hampshire law, as incorporated by 11 U.S.C. § 522(b)(2).[1]

---

1. Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

More specifically, the Debtors claimed the relevant financial assets as exempt pursuant to RSA 511:2(XIX), a newly enacted New Hampshire exemption provision which essentially provides that certain tax-exempt financial instruments and assets are exempt from attachment and execution without limitation. The vexing wrinkle in RSA 511:2(XIX) with respect to the instant matter, however, is that it explicitly provides that it does not reach debts arising on or before January 1, 1999. It is undisputed that most, if not all, of the Debtors' unsecured debts, which amount to $90,153.71, arose before January 1, 1999. This statutory carve-out for pre-January 1, 1999 debts forms the basis of the instant dispute.

The Trustee makes the straightforward argument that because most, if not all, of the Debtors' unsecured debts arose before January 1, 1999, RSA 511:2(XIX), by its explicit terms, does not provide an exemption for the relevant financial assets. In response, the Debtors point to *In re Weinstein,* 164 F.3d 677 (1st Cir.1999), *cert. denied,* —— U.S. ——, 119 S.Ct. 2394, 144 L.Ed.2d 794 (1999), a recent decision from the Court of Appeals for the First Circuit, in support of their proposition that § 522(c) preempts the pre-January 1, 1999 debt carve-out of RSA 511:2(XIX), with the result that all three financial assets may be exempted in full for purposes of bankruptcy. The Trustee counters by arguing that the instant matter is distinguishable from *Weinstein,* and that, even if it is not, RSA 511:2(XIX) is violative of the Contracts Clause of the United States Constitution if § 522(c) is allowed to preempt RSA 511:2(XIX)'s pre-January 1, 1999 carve-out. Because the Trustee questions the constitutionality of RSA 511:2(XIX), this Court certified the Contracts Clause issue to the New Hampshire

Attorney General (the "Attorney General") pursuant to 28 U.S.C. § 2403(b) and allowed the Attorney General time to intervene.[2] The Attorney General subsequently intervened and counsel from the Attorney General's office appeared at the hearing.

The Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. DISCUSSION

### A. RSA 511:2(XIX)

■ RSA 511:2 provides, *inter alia:*

The following goods and property are exempted from attachment and execution . . .

XIX. Subject to the Uniform Fraudulent Transfer Act, RSA 545–A, any interest in a retirement plan or arrangement qualified for tax exemption purposes under present or future acts of Congress; provided, any transfer or rollover contribution between retirement plans shall not be deemed a transfer which is fraudulent as to a creditor under the Uniform Fraudulent Transfer Act. "Retirement plan or arrangement qualified for tax exemption purposes" shall include without limitation, trusts, custodial accounts, insurance, annuity contracts, and other properties and rights constituting a part thereof. By way of example and not by limitation, retirement plans or arrangements qualified for tax exemption purposes permitted under present

2. Section 2403(b) of 28 U.S.C. provides, in pertinent part:

In any action, suit, or proceeding in a court of the United States to which a State . . . is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene . . . on the question of constitutionality.

28 U.S.C. § 2403(b).

acts of Congress include defined contribution plans and defined benefit plans as defined under the Internal Revenue Code (IRC), individual retirement accounts including Roth IRAs and education IRAs, individual retirement annuities, simplified employee pension plans, Keogh plans, IRC section 403(a) annuity plans, IRC section 403(b) annuities, and eligible state deferred compensation plans governed under IRC section 457. This paragraph shall be in addition to and not a limitation of any other provision of New Hampshire law which grants an exemption from attachment or execution and every other species of forced sale for the payment of debts. *This paragraph shall be effective for retirement plans and arrangements in existence on, or created after January 1, 1999, but shall apply only to extensions of credit made, and debts arising, after January 1, 1999.*

RSA 511:2(XIX) (emphasis added). In essence, RSA 511:2(XIX) would allow the Debtors to exempt their three financial assets from state law attachment and execution without limitation. However, as the underscored language indicates, this power would not run to pre-January 1, 1999 debts. Because most, if not all, of the Debtors' debts are of such a variety, RSA 511:2(XIX) offers little benefit to the Debtors at the state law level. However, the Debtors argue that, pursuant to the recent *Weinstein* decision, RSA 511:2(XIX)'s pre-January 1, 1999 debt carve-out is rendered lifeless in the context of a federal bankruptcy case. This assertion requires a detailed examination of the *Weinstein* opinion.

### B. *In re Weinstein*

The *Weinstein* decision was issued by the Court of Appeals for the First Circuit on January 7, 1999. Its basic facts are straightforward. Harry Weinstein ("Weinstein") owned a residence for a period of more than two decades. *See Weinstein,* 164 F.3d at 679. On August 4, 1992,

Patriot Portfolio, LLC ("Patriot") recorded a judgment lien against the property for the purpose of enforcing an underlying debt. *See id.* On April 2, 1996, Weinstein recorded a Declaration of Homestead, which is necessary to acquire an estate of homestead pursuant to Massachusetts law. *See id.* Shortly thereafter, Weinstein filed for bankruptcy under Chapter 7 and claimed $55,000.00 in his residence as exempt pursuant to the Massachusetts homestead statute. *See id.* Patriot objected to Weinstein's exemption on the ground that, pursuant to § 1 of the Massachusetts homestead statute, Weinstein's residence was not exempt vis-a-vis Patriot's claim since the statute provides that the homestead exemption does not apply to debts arising before the acquisition of an estate of homestead. The ultimate issue before the *Weinstein* Court was whether Weinstein could avoid Patriot's lien pursuant to § 522(f). Because § 522(f) allows the avoidance of a lien only to the extent that such a lien impairs an exemption that a debtor would otherwise be entitled to, the *Weinstein* Court necessarily had to decide whether Weinstein was entitled to an exemption under the Massachusetts homestead statute.

Section 1 of the Massachusetts homestead statute provides, in pertinent part:

[An estate of homestead] shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases . . .

(2) for a debt contracted prior to the acquisition of said estate of homestead . . . .

Mass. Gen. Laws ch. 188, § 1. By its plain terms, the Massachusetts homestead statute would not have provided Weinstein with an exemption vis-a-vis Patriot's debt under Massachusetts law since he acquired his estate of homestead after the Patriot debt arose. However, the *Weinstein* Court held that § 522(c) of the Bankruptcy

Code preempts § 1(2) of the Massachusetts homestead statute, with the result that Weinstein could exempt his home and therefore avoid Patriot's lien in bankruptcy.

Section 522(c) provides that exempt property is not liable during or after a bankruptcy case for any debts arising before the commencement of a case, except for certain debts enumerated in three subparagraphs. *See* 11 U.S.C. § 522(c). The excepted debts include: "(1) debts for certain taxes and customs duties; (2) debts for alimony, maintenance, or support; (3) liens that cannot be avoided; (4) liens that are not void; (5) tax liens; and (6) certain nondischargeable debts owed to federal depository institutions." *Weinstein*, 164 F.3d at 682. In concluding that § 522(c) preempts § 1(2) of the Massachusetts homestead statute, the *Weinstein* Court reasoned that exempt property loses its exempt status in bankruptcy only with respect to the types of debts enumerated in the three subparagraphs of § 522(c) and that, because the prior contracted debt exception found in § 1(2) of the Massachusetts homestead statute does not come within one of the three subparagraphs, it is preempted for purposes of bankruptcy. *See id.* at 682–83. The *Weinstein* Court explicitly adopted Judge Feeney's conclusion that:

> Because the exceptions to the Massachusetts homestead have the same effect on the homestead as the exceptions set forth in § 522(c), ... the Massachusetts homestead statute is preempted to the extent that it permits exempt property to be liable for debts other than those expressly enumerated in § 522(c)(1)-(3), particularly because the language employed by Congress in § 522(c) is devoid of ambiguity.

*See id.* at 683 (citing *In re Whalen–Griffin*, 206 B.R. 277, 291–92 (Bankr.D.Mass. 1997)).

The Debtors argue that the pre-January 1, 1999 debt carve-out found in RSA 511:2(XIX) is indistinguishable from the prior contracted debt exception found in § 1(2) of the Massachusetts homestead statute and that, therefore, it is preempted by § 522(c). The Trustee, on the other hand, argues that the two state statutes are conceptually dissimilar. Because this Court is bound by precedent established by the Court of Appeals for the First Circuit, the application of the *Weinstein* holding to RSA 511:2(XIX) forms the crux of the parties' dispute.

## C. *Weinstein* as Applied to RSA 511:2(XIX)

The ultimate question before the Court is whether the carve-out provided by RSA 511:2(XIX) is distinctive enough, as compared to § 1(2) of the Massachusetts homestead statute, to not fall under the ambit of *Weinstein*. The Court finds that it is not. An attempt to substantively distinguish the two statutes with respect to the *Weinstein* decision would be both disingenuous and an unwarranted deference to form at the expense of legal substance.

RSA 511:2(XIX) and § 1(2) of the Massachusetts homestead statute are both structurally and conceptually analogous. Section 1(2) of the Massachusetts homestead statute first provides that an estate of homestead is exempt, and then proceeds to except prior contracted for debts. Likewise, RSA 511:2(XIX) first provides that certain financial instruments and assets are exempt, and then proceeds to except debts arising before January 1, 1999. Admittedly, from a pure form perspective, the two statutes are slightly different. Section 1(2) of the Massachusetts homestead statute carves out a type of debt without regard to actual dates. RSA 511:2(XIX), on the other hand, carves out debts according to whether they arose before or after January 1, 1999, with an apparent view towards making the application of the statute prospective in nature. The Trustee argues, therefore, that the pre-January 1, 1999 carve-out delineates the overall scope of the exemption and that it is not a tangential exception that may be

preempted by § 522(c). That is, he argues that § 522(b)(2) picks up RSA 511:2(XIX) with the January 1, 1999 limitation already built-in before § 522(c) even comes into play. The Trustee points to *In re Duda*, 182 B.R. 662 (Bankr.D.Conn.1995) in support of his position.

The *Duda* decision involved the Connecticut homestead statute. The statute provides that it "shall take effect on October 1, 1993 and shall be applicable to any lien for any obligation or claim on or after said date." *See Duda*, 182 B.R. .at 664. The issue before the *Duda* Court was whether debtors could use the Connecticut exemption in bankruptcy with respect to debts arising before October 1, 1993. The *Duda* Court concluded that debtors could not use the Connecticut homestead exemption against pre-October 1, 1993 debts on the ground that the pre-October 1, 1993 limitation defined the scope of the exemption itself. *See id.* at 666–68. Although the *Duda* decision supports the Trustee's position to some extent, it does not carry the day for two reasons. First, the *Duda* opinion does not address the issue of whether § 522(c) preempts state exemption statutes with non- § 522(c)(1)-(3) carve-outs, an issue of paramount concern in the instant matter. Second, and more importantly, even if the *Duda* opinion is found to be on point, it is not imbued with the precedential power of a conflicting decision from this circuit's Court of Appeals.

█ The Trustee's argument raises a nettlesome question: when does a limitation contained in a state exemption statute rise to the level of defining the boundaries of the exemption itself for purposes of bankruptcy? In the context of deciding the same § 522(c) issue addressed by the *Weinstein* opinion, the Bankruptcy Appellate Panel for the First Circuit suggested that such a line is drawn at the point where a limitation is "so integral a part of the state exemption's essence, that the exception[ ] must operate as part-and-parcel of the exemption ...." *Bruin Portfolio, LLC v. Leicht (In re Leicht)*, 222 B.R. 670,

677 (1st Cir. BAP 1998). Moreover, the *Leicht* Court opined that "states can determine the nature and amount of property that can be exempted, but not the types of debts to which the exemption applies." *Id.* at 678 (quoting *Whalen–Griffin*, 206 B.R. at 282). In *Weinstein*, the Court of Appeals for the First Circuit expressly cited *Leicht* with approval. *See Weinstein*, 164 F.3d at 682. RSA 511:2(XIX) defines the "nature" of the property to be exempted as certain financial instruments and assets and defines the amount as unlimited. This, of course, is perfectly permissible. However, as *Leicht* suggests, § 522(c) does not allow states to define the categories of debts to which such an exemption applies when such categories do not fall within the three subparagraphs of § 522(c). RSA 511:2(XIX) attempts to define the categories of debts to which it applies by carving out pre-January 1, 1999 obligations. This is impermissible in light of § 522(c). Accordingly, the pre-January 1, 1999 carve-out found in RSA 511:2(XIX) must fall at the hand of § 522(c), as interpreted by the *Weinstein* Court.

The Trustee also raises the policy concern that applying the *Weinstein* holding to RSA 511:2(XIX) creates an economic incentive for some debtors to file for bankruptcy since bankruptcy will provide an enhanced exemption regarding certain financial assets as compared to state law. However, a court's "role is not to make public policy; legislation is the exclusive province of Congress." *Dahar v. Bevis (In re Bevis)*, 242 B.R. 805, 811 (Bankr. D.N.H.1999) (citing *Roost v. Reynolds (In re Reynolds)*, 189 B.R. 199, 203 (Bankr. D.Or.1995)). By enacting § 522(c), Congress has made the decision that states cannot craft their exemptions in such a way so as to circumvent the broad exemption scope of § 522. Such a decision is not open to judicial amendment. The Trustee's policy argument was not a stumbling block for the *Weinstein* Court, nor should it be for this Court when faced with clear statutory language.

### D. The Contracts Clause

The Trustee argues in the alternative that if this Court finds that § 522(c) preempts RSA 511:2(XIX)'s pre-January 1, 1999 carve-out, then the statute as preempted violates the so-called Contracts Clause of the United States Constitution. The Contracts Clause provides that "[n]o state shall ... pass any ... Law impairing the Obligation of Contracts ...." U.S. Const. art. I, § 10, cl. 1. The Supreme Court has crafted a multi-part test to determine whether a state law is violative of the Contracts Clause. First, it must be determined "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). Whether a state law poses a substantial impairment turns on three factors: (1) whether there is a contractual relationship; (2) whether a change in the law impairs such a relationship; and (3) whether such impairment is substantial. *See Seltzer v. Cochrane (In re Seltzer)*, 104 F.3d 234, 236 (9th Cir.1996) (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). If it is found that a state law acts as a substantial impairment of a contractual relationship, the next question is whether "the impairment is both reasonable and necessary to fulfill an important public purpose." *Seltzer*, 104 F.3d at 236 (citing *Energy Reserves*, 459 U.S. at 411–12, 103 S.Ct. 697). In making such a decision, courts should give deference to "legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 412, 103 S.Ct. 697 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22–23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).

The Trustee argues that RSA 511:2(XIX), as modified in bankruptcy by § 522(c), violates the Contracts Clause by retroactively removing certain financial assets from the reach of creditors who relied on such assets when entering into contractual relationships with certain debtors. More specifically, the Trustee maintains that this Court's reading of RSA 511:2(XIX) against the backdrop of § 522(c) is a substantial impairment of contractual relationships, which is not reasonable and necessary to fulfill an important public purpose. The Debtors, of course, disagree with the Trustee's contentions and argue that the impairment is not substantial and is reasonable and necessary to fulfill an important public purpose. In addition, the Attorney General filed a memorandum of law arguing that there is no Contracts Clause violation since there is no substantial impairment and the statute is reasonable and necessary to fulfill an important public purpose.

Although the parties present effective arguments, the Court finds that the Trustee's Contracts Clause attack is misplaced as a threshold matter. The Contracts Clause applies only to state, and not federal, laws. *See Glosemeyer v. Missouri–Kansas–Texas Railroad*, 879 F.2d 316, 320 (8th Cir.1989). RSA 511:2(XIX), without the gloss of § 522(c), is specifically drafted to avoid retroactive application. It therefore fails the first hurdle toward a finding that the Contracts Clause has been violated. In other words, in isolation, it does not constitute a substantial impairment. Only as viewed through the lens of § 522(c) does the Trustee argue that RSA 511:2(XIX) violates the Contracts Clause. In essence, therefore, the Trustee argues that RSA 511:2(XIX), only as modified by *federal* law and only as applied in the *federal* context of bankruptcy, violates the Contracts Clause. It is solely the federal modification of a state law that the Trustee argues runs afoul of the Constitution. The Court finds that retroactive application of a state law solely by virtue of partial federal law preemption cannot be violative of the Contracts Clause since the Contracts Clause is of no relevance with respect to

federal law. Accordingly, the Trustee's Contracts Clause argument must fail.

## III. CONCLUSION

For the reasons stated above, the Court denies the Trustee's objection to exemptions. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order in accordance with this opinion shall be entered.